**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03142-DDD-KLM

**MIDLAB, INC., a Tennessee Corporation,**

Plaintiff,

v.

**Merrie Pisano Wycoff individually and as trustee of The Wycoff Family Trust; Wycoff Financial, LLC, a Colorado Limited Liability Company; Magnus Veritas LLC, a Colorado Limited Liability Company; and GCS452, LLC, a Colorado Limited Liability Company,**

Defendants.

---

**AMENDED COMPLAINT**

---

Plaintiff Midlab, Inc., for its Amended Complaint against Defendants Merrie Pisano Wycoff, Wycoff Financial, LLC, Magnus Veritas LLC, and GCS452, LLC (collectively "Defendants"), states as follows:

**SUMMARY**

Midlab, Inc. alleges that Defendants conspired to transfer assets in violation of the Uniform Fraudulent Transfer Act for the purpose of hindering, delaying, and defrauding Midlab, Inc. as a creditor of Zap! Products, Inc. and Jeffrey Wycoff and, further, that Merrie Wycoff engaged in and conspired with others to engage in actual fraud.

**PARTIES, JURISDICTION, AND VENUE**

1.      Midlab, Inc. is a corporation incorporated under the laws of the State of Tennessee with its principal place of business located at 140 Private Brand Way, Athens, Tennessee, 37303. Plaintiff has no offices in the State of Colorado.

1

2.      Defendant Merrie Pisano Wycoff is an individual who resides at 3018 South Lakeridge Trail, Boulder, CO 80302, and who is a citizen of the State of Colorado, at all times relevant to this case having domiciled at the aforementioned address with intent to make the State of Colorado her true, fixed, and permanent home.

3.      Defendant Wycoff Financial, LLC is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 3018 South Lakeridge Trail, Boulder, CO 80302. On information and belief, the sole member of Wycoff Financial, LLC is Merrie Wycoff.

4.      Defendant Magnus Veritas, LLC is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 3018 South Lakeridge Trail, Boulder, CO 80302. The members of Magnus Veritas, LLC are the Azuraye J. Wycoff Irrevocable Trust utd June 19, 2018, and the Devon A. Wycoff Irrevocable Trust utd June 19, 2018.  On information and belief, both of these member-trusts are Colorado trusts, and Merrie Wycoff is a trustee of both member-trusts. Merrie Wycoff is the sole Manager of Magnus Veritas, LLC.

5.      Defendant GCS452, LLC is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 3018 South Lakeridge Trail, Boulder, CO 80302. The members of GCS452, LLC are the Azuraye J. Wycoff Irrevocable Trust utd June 19, 2018, and the Devon A. Wycoff Irrevocable Trust utd June 19, 2018.  On information and belief, both of these member-trusts are Colorado trusts, and Merrie Wycoff is a trustee of both member-trusts. Merrie Wycoff is the sole Manager of GCS452, LLC.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and because the citizenship of Plaintiff is different from that of any Defendant.

7.      Personal jurisdiction over each Defendant exists in this District pursuant to C.R.S. § 13-1-124.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

9.      Merrie Wycoff, together with her late husband Jeffrey Wycoff, incorporated, owned and controlled Zap! Products, Inc., a company that marketed and sold cleaning products directly to consumers through infomercials as well as through various retailers such as Wal-Mart. Jeffrey Wycoff and Merrie Wycoff incorporated Zap! Products, Inc. on November 11, 2006, as a Colorado corporation under the original name of Anteres International, Inc. Jeffrey Wycoff and Merrie Wycoff changed the name of the company to Zap! Products, Inc. on February 5, 2011.

10.     Jeffrey Wycoff was, prior to his death, the President of Zap! Products, Inc. and an authorized agent and representative of Zap! Products, Inc. He also was, at all times relevant to this case, the husband and business partner of Merrie Wycoff.

11.     Merrie Wycoff, wife of Jeffrey Wycoff, held one or more officer positions with Zap! Products, Inc., including the positions of Vice President, Secretary, and Treasurer. On her LinkedIn profile, she represents that she was Vice-President of Zap! Products, Inc.

12.     Certain background information regarding Jeffrey Wycoff and Merrie Wycoff's formation of Zap! Products, Inc. is set forth in a 59-page Order by the United States Tax Court, T.C. Memo. 2017-203, *Jeffrey Wycoff and Merrie Pisanno-Wycoff v. Commissioner of Internal*

*Revenue,* Docket No. 24158-09, filed October 16, 2017. Briefly, in the 1990s Jeffrey Wycoff and Merrie Wycoff began marketing a tile-cleaning product named "Zap" through Sirius Products, Inc., a company that they had incorporated on January 11, 1995, and of which they were the only officers and board members.

13.     The broader significance of the Tax Court's Order in *Jeffrey Wycoff and Merrie Pisanno-Wycoff v. Commissioner of Internal Revenue* to the instant case is that, in October 2017, the Tax Court sustained substantial accuracy-related penalties in excess of $1,000,000 that the Internal Revenue Service earlier had assessed against Jeffrey Wycoff and Merrie Wycoff in relation to Federal tax deficiencies of $4,511,398 and $518,138 for tax years 2001 and 2002, respectively. Those accuracy-related penalties and the resulting indebtedness to the Internal Revenue Service are part of the factual background of indebtedness on the part of Jeffrey Wycoff and Merrie Wycoff underlying the fraudulent transfers of which Midlab, Inc. now complains in the instant lawsuit.

14.     Effective as of September 16, 2015, Zap! Products, Inc. through its then-President and authorized representative Jeffrey Wycoff and Midlab, Inc. through its President and authorized representative Matthew Schenk, signed a Manufacturing and Supply Contract, pursuant to which Midlab, Inc. agreed to manufacture products for Zap! Products, Inc.

15.     The law firm Brownstein Hyatt Farber Shreck ("BHFS") represented Zap! Products, Inc. in connection with the Manufacturing and Supply Contract, as evidenced by, *inter alia,* email exchanges between counsel at BHFS and counsel for Midlab, Inc. concerning the contract both prior to and during September 2015.

16.     On November 11, 2015, as an inducement to Midlab, Inc. to continue manufacturing products for Zap Products, Inc., Jeffrey Wycoff signed a Limited Continuing

Guaranty ("Guaranty"), pursuant to which he guaranteed the "full, prompt, and complete payment" of Zap Products, Inc.'s obligations to Midlab, Inc. Russell Leadingham witnessed Mr. Wycoff's signature on the Guaranty.

17.     BHFS represented Jeffrey Wycoff and Merrie Wycoff in connection with the Guaranty, as evidenced by, *inter alia,* exchanges of emails between BHFS attorney Kevin A. Kudney and Coleman Hoffman in November 2015, concerning the Guaranty and Jeffrey Wycoff's agreement to personally guaranty the obligations of Zap! Products, Inc. to Midlab, Inc. up to $1,000,000.

18.     In connection with negotiations of the Guaranty, on November 4, 2015, BHFS as counsel for Jeffrey Wycoff, Merrie Wycoff, and Zap! Products, LLC provided Midlab, Inc. with a personal financial statement, titled "Statement of Financial Condition," for Jeffrey Wycoff and Merrie Wycoff, dated as of October 31, 2015. BHFS informed Midlab, Inc. that the Statement of Financial Condition was "the personal financial statements for Jeff and Merrie" and that it was being provided to Midlab, Inc. "for the purpose of evaluating the support for the Midlab/Zap! Products, Inc. contract." BHFS also provided Midlab, Inc. with a cover letter to the Statement of Financial Condition signed by Jeffrey Wycoff and Merrie Wycoff's Certified Public Accountant, Robert H. Henke, dated November 3, 2015, stating that "Jeffrey Wycoff and Merrie Wycoff are responsible for the accompanying statement of financial condition as of October 31, 2015, in accordance with accounting principles generally accepted in the United States of America."

19.     One of the assets that Jeffrey Wycoff and Merrie Wycoff listed on their Statement of Financial Condition was "REAL ESTATE – FARM" ("the Farm"), which they represented to Midlab, Inc. was worth $4,750,000.

20.     Jeffrey Wycoff and Merrie Wycoff further represented to Midlab, Inc. on their Statement of Financial Condition that the mortgage on the Farm was $3,650,000, indicating equity in the farm of $1,100,000.

21.     In addition, Jeffrey Wycoff spoke with Vince Keller, one of Midlab, Inc.'s board members, about the farm in the context of establishing his net worth. Jeffrey Wycoff told Vince Keller that he and Merrie Wycoff owned the Farm.

22.     The street address of the Farm is 9417 North Foothills Highway, Longmont, Colorado, 80503. The Farm has the following legal description: Lot 1, Block 2, and Outlot B, Mountain Ridge, County of Boulder, State of Colorado.

23.     The Farm also was the location of Autumn Hill Center, LLC, an equestrian center that was founded, owned, and operated by Jeffrey Wycoff and Merrie Wycoff.

24.     Jeffrey Wycoff and Merrie Wycoff purchased the Farm in 2001 together with certain valuable water rights or shares registered with Left Hand Ditch Company.

25.     On April 29, 2015, Jeffrey Wycoff and Merrie Wycoff organized Wycoff Financial, LLC with the assistance of their attorneys at BHFS. Jeffrey Wycoff and Merrie Wycoff were the members and managers of Wycoff Financial, LLC.

26.     Also on April 29, 2015, immediately after organizing Wycoff Financial, LLC, Jeffrey Wycoff and Merrie Wycoff caused a new company, Zap! Holdings, LLC, to be organized with the assistance of their attorneys at BHFS. Wycoff Financial, LLC was identified as the registered agent of Zap! Holdings, LLC.

27.     In or about May 2015, shortly before Jeffrey Wycoff executed the Guaranty, and prior to Jeffrey Wycoff and Merrie Wycoff providing their Statement of Financial Condition to Midlab, Inc., BHFS assisted Jeffrey Wycoff and Merrie Wycoff in transferring title to the Farm

and the associated water rights to Wycoff Financial, LLC, for nominal consideration of $10. In connection with that transfer, on May 7, 2015, Jeffrey Wycoff and Merrie Wycoff each signed a Statement of Authority on behalf of Wycoff Financial, LLC. BHFS prepared the deed to effectuate the transfer of title to the Farm from Jeffrey Wycoff and Merrie Wycoff to Wycoff Financial, LLC, which Jeffrey Wycoff and Merrie Wycoff signed on May 15, 2015.

28.     Around this time, the Wycoffs sought and obtained an additional large loan from BC24, LLC, as discussed below.

29.     Jeffrey Wycoff and Merrie Wycoff did not reflect the transfer on the Statement of Financial Condition that they provided to Midlab, Inc., nor did the Statement of Financial Condition otherwise refer to Wycoff Financial, LLC or particular assets held through Wycoff Financial, LLC. The impression created by the Statement of Financial Condition was that the Farm was an asset of Jeffrey Wycoff and Merrie Wycoff that Midlab, Inc. could rely upon as supporting the Guaranty.

30.     Another asset listed on the Statement of Financial Condition was "RESIDENCE" ("the Residence") represented as being worth $1,900,000.

31.     The address of the Residence is 3018 S. Lakeridge Trail, Boulder, Colorado 80302. The Residence has the following legal description: Lot 5, Block 1, Lake of the Pines, County of Boulder, State of Colorado. The Residence was, in fact, the primarily if not sole residence of Jeffrey Wycoff and Merrie Wycoff, and it remains Merrie Wycoff's residence to this day.

32.     Jeffrey Wycoff and Merrie Wycoff represented on their Statement of Financial Condition that the mortgage payable on the Residence was $1,000,000, indicating equity in the residence of $900,000.

33.     Jeffrey Wycoff also mentioned the Residence to Vince Keller in the context of establishing his net worth.

34.     Jeffrey Wycoff and Merrie Wycoff purchased the Residence on or about July 30, 1998. In 1998 Jeffrey Wycoff and Merrie Wycoff deeded title to the residence to "The Wycoff Family Trust U/A/D 6/12/98." However, Jeffrey Wycoff and Merrie Wycoff thereafter inconsistently represented the Residence as being owned by themselves personally, both to Midlab, Inc. (as indicated by the Statement of Financial Condition) as well as to third parties. The Statement of Financial Condition did not refer to The Wycoff Family Trust U/A/D 6/12/98 or particular assets held through The Wycoff Family Trust U/A/D 6/12/98.

35.     Another asset that Jeffrey Wycoff and Merrie Wycoff listed on the Statement of Financial Condition was "Investments" in companies including "Zap! Products."

36.     On information and belief based on information obtained to date, as of the dates that Jeffrey Wycoff and Merrie Wycoff prepared their Statement of Financial Condition and provided it to Midlab, Inc., Zap! Products, Inc. was a subsidiary of Zap! Holdings, LLC, which in turn was owned by Wycoff Financial, LLC. As such, the Statement of Financial Condition was materially misleading insofar as Jeffrey Wycoff and Merrie Wycoff represented to Midlab, Inc. that they owned Zap! Products, Inc. without disclosing to Midlab, Inc. the ownership structure that involved Wycoff Financial, LLC and Zap! Holdings, LLC as intermediary companies through which Jeffrey Wycoff and Merrie Wycoff owned some or all of the listed assets. Additionally, the Statement of Financial Condition reflects Jeffrey Wycoff and Merrie Wycoff's disregard for corporate formalities and separateness of Wycoff Financial, LLC and Zap! Holdings, LLC.

37.     Jeffrey Wycoff and Merrie Wycoff represented to Midlab, Inc. on their Statement of Financial Condition that they had a net worth of $11,572,000. That statement was false or materially misleading for all the reasons stated elsewhere in this Complaint.

38.     Before entering into the Guaranty, Midlab, Inc. considered and relied upon Jeffrey Wycoff and Merrie Wycoff's Statement of Financial Affairs.

39.     Based on the representations of Jeffrey Wycoff and Merrie Wycoff made on the Statement of Financial Condition, Midlab, Inc. proceeded with manufacturing products for Zap! Products, Inc., with Jeffrey Wycoff's obligations under the Guaranty securing payment of Zap! Products, Inc.'s obligations to Midlab, Inc.

40.     Effective as of April 1, 2016, Jeffrey Wycoff on behalf of Zap! Products, Inc. signed an Amendment to Manufacturing and Supply Agreement with Midlab, Inc. Jeffrey Wycoff further signed the Amendment to Manufacturing and Supply Agreement as guarantor, agreeing that the Guaranty would extend to the obligations under the Amendment to Manufacturing and Supply Agreement.

41.     Effective as of September 2, 2016, Jeffrey Wycoff on behalf of Zap! Products, Inc. signed a Second Amendment to Manufacturing and Supply Agreement with Midlab, Inc. Jeffrey Wycoff further signed the Second Amendment to Manufacturing and Supply Agreement as guarantor, agreeing that the Guaranty would extend to the obligations under the Second Amendment to Manufacturing and Supply Agreement.

42.     Midlab, Inc. performed its obligations under the Manufacturing and Supply Agreement, as amended, and Zap! Products, Inc. incurred indebtedness to Midlab, Inc. under the Manufacturing and Supply Agreement, as amended, in the amount of $841,121.90, plus interest.

43.     Jeffrey Wycoff communicated with Midlab, Inc.'s representatives on numerous occasions acknowledging Zap! Products, Inc.'s debt to Midlab, Inc., as secured by the Guaranty. Jeffrey Wycoff repeatedly promised and assured Midlab, Inc. that he and Merrie Wycoff were taking steps to generate funds to pay Midlab, Inc., specifically including selling the Farm.

44.     On July 13, 2016, Jeffrey Wycoff promised Vince Keller, one of Midlab, Inc.'s directors, that he and Merrie Wycoff were selling the Farm to pay Midlab, Inc. Later that same day, Jeffrey Wycoff confirmed in an email to Vince Keller with the subject line "Farm" that he and Merrie Wycoff were in fact selling the Farm, as follows:

> Vince,
>
> I don't think I answered your question this morning. We priced the farm a bit below market value to sell it quickly. It may be worth a lot more but anything with a price tag upwards of $5M takes some time to sell.
>
> Jeff
>
> Jeff Wycoff
> President/CEO
> Zap! Products, Inc.

45.     On December 5, 2016, Jeffrey Wycoff emailed Midlab, Inc.'s President Matt Schenk with the following update on his and Merrie Wycoff's sale of the Farm to generate funds to pay Midlab, Inc.:

> Morning Matt,
>
> . . .
>
> The farm: Mr. Trump kicked the cramp [sic] out of high end real estate here in Boulder and elsewhere. Anything over $2M is pretty much dead in the water until we see how crazy he really is.
>
> . . .
>
> Jeff
> Jeff Wycoff

10

President/CEO
Zap! Products, Inc.

46.     Jeffrey Wycoff spoke on other occasions with Vince Keller and Matt Schenk acknowledging his and Zap! Products, Inc.'s debt to Midlab, Inc. and assuring them that he was selling the Farm to generate money to pay Midlab, Inc.

47.     At all times when Jeffrey Wycoff assured Midlab, Inc. that he and Merrie Wycoff were selling the Farm to pay Midlab, Inc., Jeffrey Wycoff was a manager of Wycoff Financial, LLC, in whose name the Farm was titled.

48.     Midlab, Inc. relied upon Jeffrey Wycoff's statements that he and Merrie Wycoff were selling the Farm to pay sums that Zap! Products, Inc. owed to Midlab, Inc. by, among other things, forbearing from initiating any legal action against Zap! Products, Inc. or Jeffrey Wycoff.

49.     Merrie Wycoff, together with Jeffrey Wycoff, exercised control over Wycoff Financial, LLC. On March 30, 2017, and again on April 11, 2018, Merrie Wycoff caused Periodic Reports to be filed with the Colorado Secretary of State for Wycoff Financial, LLC.

### The Wycoffs Transfer Assets to Defeat Creditors
### Upon Receiving an Adverse Ruling by the Tax Court

50.     In addition to their obligations to Midlab, Inc., between 2015 and July of 2017, the Wycoffs—individually and through their network of entities (collectively, the "Wycoffs")— borrowed money, guaranteed loans, and owed debts to a number of creditors, including to a Michigan company named BC24, LLC.

51.     The loan that the Wycoffs obtained from BC24, LLC to Wycoff Financial, LLC and Zap! Holdings, LLC was guaranteed by, among others, (a) Merrie Wycoff, (b) the Jeffrey B. Wycoff and Merrie Wycoff 2003 Insurance Trust u/a/d December 11, 2003, and (c) the Merrie Wycoff 2003 Insurance Trust u/a/d December 15, 2003 (the latter two, henceforth, collectively,

the "Insurance Trusts").  These Insurance Trusts owned multiple life insurance policies insuring the life of Jeffrey Wycoff.

52.     The trustee of the Insurance Trusts was nominally Edward Certisimo, a family relation to the Wycoffs.  However, Mr. Certisimo never had the policies in his possession, did not administer the insurance policies, and did not make premium payments.  Rather, in his words, he "acted as trustee for the convenience of a relative." In fact, at all relevant times, Jeff Wycoff and Merrie Wycoff controlled the Insurance Trusts.

53.     On October 16, 2017, the United States Tax Court issued the above-described adverse ruling concerning the Wycoffs' tax liabilities.

54.     Upon the adverse ruling by the Tax Court, Jeff and Merrie Wycoff transferred insurance policies on Jeff Wycoff's life out of the Insurance Trusts's names and out of Merrie Wycoff's name. This was done to withdraw assets that could be reached by BC24, LLC and other creditors and was made to hinder, delay, and defraud their creditors as a whole and to keep assets within their and/or their family's control.

55.     In November and December of 2017, Merrie and Jeffrey Wycoff arranged to transfer ownership of insurance policies that insured the life of Jeffrey Wycoff, including but not necessarily limited to the following:

a.   Transamerica Policy # 41643514 was previously owned by the Merrie Wycoff 2003 Insurance Trust and the beneficiary of the policy was Merrie Wycoff.  The Wycoffs transferred this policy's ownership to their daughter Azuraye Wycoff and changed the beneficiary to be 66.6% to their daughter Azuraye Wycoff and 33.3% to their daughter Devon Wycoff.

b.   Transamerica Policy # 41643528 was previously owned by Merrie Wycoff and the beneficiary of the policy was Merrie Wycoff.  The Wycoffs transferred this policy's ownership to their daughter Azuraye Wycoff and changed the beneficiary to be 50% to their daughter Azuraye Wycoff and 50% to their daughter Devon Wycoff.

    c.   Transamerica Policy # 41643517 was previously owned by Merrie Wycoff and the beneficiary of the policy was Merrie Wycoff.  The Wycoffs transferred this policy's ownership to their daughter Devon Wycoff and changed the beneficiary to be their daughter Devon Wycoff.

    d.   Transamerica Policy # VXL9663080 was previously owned by the Merrie Wycoff 2003 Insurance Trust and the beneficiary of the policy was Merrie Wycoff.  The Wycoffs transferred this policy's ownership to their daughter Devon Wycoff and changed the beneficiary to their daughter Devon Wycoff.

    e.   John Hancock Policy # 56643737 was previously owned by Merrie Wycoff.  On information and belief, Merrie Wycoff was the beneficiary of the policy.  The Wycoffs transferred this policy's ownership to their daughter Devon Wycoff and changed the beneficiary to their daughter Devon Wycoff.

56.    Merrie Wycoff personally was aware of, approved of, participated in, and directed the foregoing transfers.

57.    The consequence that the Wycoffs intended by these transfers—and the effect that these transfers actually had—was to reduce the portfolio of assets available to satisfy creditors' claims by millions of dollars while at the same time preserving millions of dollars of assets within the Wycoffs' immediate family.

58.    In making these transfers, the Wycoffs intended to use—and the facts bear out that they did in fact use—their children as straw persons in order to maintain control of the transferred assets. Documents evidencing these transfers demonstrate that, even where the new owner of the policy was someone other than Merrie Wycoff, the email and phone contact information was listed for Merrie Wycoff as the new owner or contact person.

59.    Contemporaneously with transferring ownership of the life insurance policies, the Wycoffs took steps to transfer additional assets.

60.    On or about December 14 to 18, 2017, after having incurred substantial debt to Midlab, Inc. and shortly after having received an adverse order from the Tax Court that affirmed deficiencies and accuracy-related penalties assessed against them by the Internal Revenue Service,

Jeffrey Wycoff and Merrie Wycoff took steps to alter the titling of the Residence. Particularly, as co-trustees of The Wycoff Family Trust Dated June 12, 1998, they caused title to the Residence to be transferred by bargain and sale deed "for consideration of less than $500" to Jeffrey Wycoff and Merrie Wycoff as joint tenants. Jeffrey Wycoff and Merrie Wycoff also signed a Statement of Authority as co-trustees of trust, affirming their authority to act for the trust.

61.    Jeffrey Wycoff committed suicide on March 31, 2018.

62.    In or about early May of 2018, the Wycoffs' daughters, Devon and Azuraye Wycoff, received over three million dollars ($3,000,000) each—for a total of over six million dollars ($6,000,000)—from the life insurance policies that insured the life of Jeffrey Wycoff. But for the transfers that occurred in November and December 2017, proceeds would have been paid to Merrie Wycoff and/or the Insurance Trusts and would have been available to the Wycoffs' creditors.

63.    On June 1, 2018, Bluewater Media, LLC filed a lawsuit against Merrie Wycoff, Wycoff Financial, LLC, and Zap! Products, Inc. in the District Court for Boulder County, Colorado, Case No. 2018-cv-30519. Bluewater Media, LLC alleged that Jeffrey Wycoff, Merrie Wycoff, and Zap! Products, Inc. were indebted to Bluewater Media, LLC in the amount of $932,000.

64.    On information and belief, between June 1, 2018, and June 27, 2018, Merrie Wycoff, Azuraye Wycoff, and BHFS agreed to cause the Farm and the Residence to be transferred to new entities that would appear on paper not to be under the control of Merrie Wycoff but in fact would be controlled by her, all for the purpose of hindering, delaying, and defrauding one or more creditors of Jeffrey Wycoff and/or Merrie Wycoff.

65.     On June 27, 2018, BHFS—counsel for Jeffrey Wycoff, Merrie Wycoff, Zap! Products, Inc., and Wycoff Financial, LLC—caused Articles of Organization to be filed with the Colorado Secretary of State for GCS452, LLC, with a principal office address of 3018 S. Lakeridge Trail, Boulder, CO 80302 (i.e., the Residence, where Merrie Wycoff continued to reside). The Articles of Organization identified the individual forming GCS452, LLC as Azuraye Wycoff of 18 Magnus Avenue, Somerville, MA 02413.

66.     Despite the nominal listing of Azuraye Wycoff as the person forming the entity, Merrie Wycoff, as trustee of the member-trusts of GCS452, LLC, controlled GCS452, LLC. Merrie Wycoff also arranged for GCS452, LLC, to confer bank account signatory authority and general authority for its affairs on Merrie Wycoff.

67.     On July 23, 2018, BHFS caused Articles of Organization to be filed with the Colorado Secretary of State for Magnus Veritas Farm, LLC, with a principal office address of 3018 S. Lakeridge Trail, Boulder, CO 80302 (i.e., the Residence, where Merrie Wycoff continued to reside). The Articles of Organization identified the individual forming Magnus Veritas Farm, LLC as Azuraye Wycoff.

68.     Azuraye Wycoff is the daughter of Jeffrey Wycoff and Merrie Wycoff. At the time of the aforementioned transfers, Azuraye Wycoff was a recent college graduate living in Massachusetts.

69.     On information and belief, Azuraye Wycoff was not even in the United States at the time of the aforementioned transfers.

70.     On July 24, 2018, BHFS filed documents with the Colorado Secretary of State to change the name of Magnus Veritas Farm, LLC to Magnus Veritas, LLC.

71.     Despite the nominal listing of Azuraye Wycoff as the person forming the entity, Merrie Wycoff, as trustee of the member-trusts of Magnus Veritas, LLC, controlled Magnus Veritas, LLC.  Merrie Wycoff also arranged for Magnus Veritas, LLC, to confer bank account signatory authority and general authority for its affairs on Merrie Wycoff.

72.     On or about July 20, 2018, Merrie Wycoff caused title to the Residence to be transferred to GCS452, LLC.

73.     On information and belief, the transfer of the Residence to GCS452, LLC was for no consideration, inadequate consideration, or consideration derived from funds that would have otherwise been part of the portfolio of assets against which creditors could have collected and thereby depleted the pool of assets against which creditors could collect. After the transfer, Merrie Wycoff continued to reside at the Residence.

74.     Also after the transfer, Merrie Wycoff submitted one or more documents to Boulder County representing herself as the owner of the Residence, specifically including but not necessarily limited to an application for a variance that she signed and dated September 15, 2019, on which she affirmed that she was the "Applicant/Property Owner" of the Residence and that the "Existing use of the Property" was "Primary Residence." Nowhere on the application did Merrie Wycoff refer to GCS452, LLC being the applicant or the owner of the Residence, nor did the application refer to Azuraye Wycoff as having any authority in relation to the Residence.

75.     On August 1, 2018, Colman Hoffman on behalf of Midlab, Inc. notified Merrie Wycoff by email that Midlab, Inc. had a claim against the estate of Jeffrey Wycoff in the amount of $841,121.90 plus interest. The email included supporting documentation.

76.     On August 3, 2018, Vince Keller, on behalf of Midlab, Inc., mailed a letter to Merrie Wycoff notifying her that Midlab, Inc. had a claim against the estate of Jeffrey Wycoff in the amount of $841,121.90 plus interest. The letter included supporting documentation.

77.     BC24, LLC, signed a Settlement Agreement effective August 3, 2018, with respect to their previous loan.  The other parties to the Settlement Agreement included Wycoff Financial, LLC, The Estate of Jeffrey B. Wycoff (through Merrie Wycoff, as the Nominated Personal Representative under Jeffrey Wycoff's Will), Merrie Wycoff, ZAP! Holdings, LLC, and ZAP! Products, Inc.

78.     In the Settlement Agreement, Merrie Wycoff admitted and agreed among other things that the Insurance Trusts violated the terms of their guaranty of the loan from BC24, LLC "based on the disbursement of the life insurance proceeds, the sole trust assets, to the beneficiaries" of the Insurance Trusts.

79.     In the Settlement Agreement and other related forbearance agreements, BC24, LLC, agreed to accept sums representing the purported sale proceeds of the Farm to Magnus Veritas, LLC and the Residence to GCS452, LLC in satisfaction of the outstanding loan balance.

80.     The funds used to "purchase" the Farm and Residence were the same funds that should have been available from the Insurance Trusts to pay BC24, LLC—namely, life insurance proceeds paid to Devon Wycoff and Azuraye Wycoff, which were then transferred to Magnus Veritas, LLC, and GSC452, LLC, and/or their member-trusts, all of which were under the functional control of Merrie Wycoff.

81.     But for the earlier transfer of life insurance policies and change of beneficiaries, the Insurance Trusts would have satisfied BC24, LLC's claims, leaving the Farm and the Residence available to Midlab, Inc. and other creditors.

82.     Instead, the life insurance proceeds—which themselves should have been available to creditors—were used to capitalize Magnus Veritas, LLC and GCS452, LLC so that those entities could remove the Farm and the Residence from the portfolio of assets that would have otherwise been available to satisfy creditors through a non-arms-length transfer made to look like a purchase and sale to outside observers, all while Merrie Wycoff remained in possession and control of the Farm and the Residence.

83.     On August 20, 2018, Azuraye Wycoff signed a Statement of Authority as "Manager" of Magnus Veritas, LLC to facilitate the transfer of the Farm from Wycoff Financial, LLC to Magnus Veritas, LLC.

84.     On August 21, 2018, Merrie Wycoff on behalf of Wycoff Financial, LLC deeded title to the Farm to Magnus Veritas, LLC. Simultaneously, Merrie Wycoff on behalf of Wycoff Financial, LLC and Autumn Hill Center, LLC deeded certain valuable water rights to Magnus Veritas, LLC.

85.     In March and April 2018, the Farm was under contract for sale for $3,300,000.

86.     On information and belief, the transfer of the Farm to Magnus Veritas, LLC was for no consideration (the purchase price itself was funded from proceeds of life insurance policies that Merrie Wycoff and Jeff Wycoff transferred to their daughters for no consideration and for purposes of hindering, delaying, and defrauding creditors), for inadequate consideration (the purported sales price was $2,500,000 despite the fact that the Farm had previously been under contract for $3,300,000), and/or for consideration derived from funds that would have otherwise been part of the portfolio of assets against which creditors could have collected and thereby depleted the pool of assets against which creditors could collect.

87.     On October 1, 2018, BHFS, as legal counsel for and on behalf of Merrie Wycoff, sent a letter to Colman Hoffman stating as follows:

> At the request of our client, Merrie Pisano Wycoff, I am writing in response to your letter dated August 3, 2018. This communication serves as notice to you and your client that we have been advised that no probate estate has been opened for the Estate of Jeffrey Wycoff and that no personal representative has been appointed.
>
> Ms. Wycoff has also advised us that the assets of the decedent subject to administration have been determined to be insufficient to warrant a probate proceeding. It is not anticipated by Ms. Wycoff that a probate estate will be required in the future.

88.     Merrie Wycoff's statements to Midlab, Inc. that the assets of Jeffrey Wycoff subject to administration were insufficient to warrant a probate proceeding, and that a probate estate would not be required in the future, either were false in that Jeffrey Wycoff did have assets sufficient to warrant a probate proceeding, or the representations were materially misleading because Merrie Wycoff and BHFS knew but omitted to disclose that she and Jeffrey Wycoff had engaged in numerous acts, both before and after Jeffrey Wycoff's death, to transfer assets and/or obligate Jeffrey Wycoff's estate to transfer assets in such a manner as to hinder, delay, and frustrate Midlab, Inc. as a creditor. In either case, Merrie Wycoff's statements to Midlab, Inc. were made to create the false impression that under no circumstances were assets available to satisfy Midlab, Inc.'s claim.

89.     Moreover, after Jeffrey Wycoff's death, Merrie Wycoff signed numerous documents in dealings with other creditors on behalf of the Estate of Jeffrey Wycoff as the nominated Personal Representative under his will.

90.     On September 2, 2018, and again on June 1, 2020, Merrie Wycoff filed periodic reports with the Colorado Secretary of State on behalf of GCS452, LLC.

91.     On May 1, 2019, and again on June 1, 2020, Merrie Wycoff filed periodic reports with the Colorado Secretary of State on behalf of Magnus Veritas, LLC.

92.     As of the date of this filing, Merrie Wycoff continues to have use and enjoyment of both the Residence and the Farm.

93.     As of the date of this filing, Merrie Wycoff remains in control of Zap! Products, Inc., Wycoff Financial, LLC, GCS452, LLC, and Magnus Veritas, LLC.

94.     Midlab, Inc. has received none of the payments that were owed by Zap! Products, Inc. or by Jeffrey Wycoff under the Guaranty.

95.     Zap! Products, Inc. is insolvent, and Merrie Wycoff has, by her and Jeffrey Wycoff's acts described herein, rendered any Estate of Jeffrey Wycoff insolvent.

96.     Since 2018, Midlab, Inc. has incurred additional damages in the form of inventory that it was forced to write off. The inventory was comprised of finished products that were produced to service ZAP! Products, Inc. orders as well as custom packaging materials that included Zap! branded boxes, labels, displays, and scrub pads. Midlab, Inc. had a right to sell this inventory and made multiple attempts to do so. Unfortunately, Midlab, Inc. was unable to sell the inventory and was forced to write off the inventory in June 2020 as not saleable. These write-offs totaled $207,253.13.

### FIRST CLAIM FOR RELIEF
*Violations of the Uniform Fraudulent Transfer Act*
*Against all Defendants*

97.     All allegations set forth in this Complaint are incorporated by reference.

98.     Defendants engaged, and agreed with third persons not named as defendants herein including BHFS, Azuraye Wycoff, and Jeffrey Wycoff to engage, in transfers of assets to hinder,

delay, and defraud Midlab, Inc. as a creditor of Zap! Products, Inc., Jeffrey Wycoff, and Merrie Wycoff.

99.     At all times relevant hereto, Wycoff Financial, LLC was an alter ego of Jeffrey Wycoff, Merrie Wycoff, and Zap! Products, Inc. Jeffrey Wycoff and Merrie Wycoff disregarded Wycoff Financial, LLC as a separate legal entity, as evidenced *inter alia* by their listing of the Farm as an asset of Jeffrey Wycoff and Merrie Wycoff on their Statement of Financial Affairs despite having titled the Farm in the name of Wycoff Financial, LLC. Jeffrey Wycoff and Merrie Wycoff used Wycoff Financial, LLC to facilitate and perpetrate a fraud upon one or more third parties, specifically including Midlab, Inc.

100.     Upon information and belief, to be confirmed through discovery, Zap! Products, Inc., also was an alter ego of Jeffrey Wycoff and Merrie Wycoff, which they used to facilitate and perpetrate a fraud upon one or more third parties, specifically including Midlab, Inc.

101.     Midlab, Inc. is, and was at the time of all relevant transfers of assets, a "creditor" of Zap! Products, Inc. as that term is defined by the Uniform Fraudulent Transfer Act.

102.     Midlab, Inc. is, and was at the time of all relevant transfers of assets, a "creditor" of Jeffrey Wycoff as that term is defined by the Uniform Fraudulent Transfer Act.

103.     Midlab, Inc. is, and was at the time of all relevant transfers of assets, a "creditor" of Merrie Wycoff as that term is defined by the Uniform Fraudulent Transfer Act.

104.     Midlab, Inc. is, and was at the time of all relevant transfers of assets, a "creditor" of Wycoff Financial, LLC as that term is defined by the Uniform Fraudulent Transfer Act.

105.     Zap! Products, Inc., Jeffrey Wycoff, Merrie Wycoff, and Wycoff Financial, LLC are, and were at the time of all relevant transfers of assets, "debtors" of Midlab, Inc. as that term is defined by the Uniform Fraudulent Transfer Act.

106.    On information and belief, Jeffrey Wycoff and Merrie Wycoff managed Zap! Products, Inc. such that it was at all times relevant to this case, undercapitalized, insolvent, and incapable of paying Midlab, Inc. and other creditors, such that Midlab, Inc.'s primary if not only recourse for payment of Zap! Products, Inc.'s debts would be against Jeffrey Wycoff individually.

107.    Jeffrey Wycoff and Merrie Wycoff's actions in November and December 2017 transferring ownership and changing beneficiary designations for various life insurance policies were "transfers" as that term is broadly defined by the Uniform Fraudulent Transfer Act and was made for purposes of hindering, delaying, or defrauding the rights of one or more creditors, specifically including Midlab, Inc.

108.    Jeffrey Wycoff and Merrie Wycoff's actions on or about December 18, 2017, transferring title to the Residence from The Wycoff Family Trust to Jeffrey Wycoff and Merrie Wycoff as joint tenants was a "transfer" or an "obligation" as those terms are broadly defined by the Uniform Fraudulent Transfer Act and was made for purposes of hindering, delaying, or defrauding the rights of one or more creditors, specifically including Midlab, Inc.

109.    Merrie Wycoff's actions on or about July 20, 2018, causing title to the Residence to be transferred to GCS452, LLC was a "transfer" as that term is defined by the Uniform Fraudulent Transfer Act and was made for purposes of hindering, delaying, or defrauding the rights of creditors, specifically including Midlab, Inc.

110.    Merrie Wycoff's actions on or about August 21, 2018, causing title to the Farm to be transferred by Wycoff Financial, LLC to Magnus Veritas, LLC was a "transfer" as that term is defined by the Uniform Fraudulent Transfer Act and was made for purposes of hindering, delaying, or defrauding the rights of one or more creditors, specifically including Midlab, Inc.

111.    The foregoing transfers were made with actual intent by all who participated in them to hinder, delay, and defraud creditors of Jeffrey Wycoff and Zap! Products, Inc., specifically including Midlab, Inc.

112.    On information and belief, the foregoing is not an exhaustive recitation of the asset transfers made with the intent to hinder, delay, or defraud creditors of Jeffrey Wycoff and Zap! Products, Inc., specifically including Midlab, Inc. Discovery will be required to identify additional transfers or, alternatively, rule out that additional transfers of assets occurred.

113.    Several of the "badges of fraud" that the Uniform Fraudulent Transfer Act directs courts to consider as a non-exclusive list of factors that support a finding of actual intent to hinder, delay, or defraud creditors are present in the foregoing transfers. Such badges of fraud include the following:

(a) The transfers were made to insiders;

(b) The debtor retained possession or control of property after the transfer;

(c) Before the transfer was made, the debtor was threatened with suit;

(d) The transfer was of substantially all of the debtor's assets;

(e) The value of consideration received by the debtor was not reasonably equivalent to the value of the asset transferred;

(f) The debtor was insolvent or became insolvent shortly after the transfer was made.

114.    Additionally, although the deeds transferring title to the Farm and the Residence were recorded with the Clerk and Recorder for Boulder County, Colorado, the Court may find that Merrie Wycoff endeavored to conceal the true nature of the transfers by using cryptically-named

entities controlled by Merrie Wycoff to take title to the Farm and the Residence and by using her daughter as a proxy manager of those entities.

115.     Certain transfers of assets were made during Jeffrey Wycoff and Merrie Wycoff's litigation with the Internal Revenue Service regarding substantial deficiencies and accuracy-related penalties owed, which were affirmed by the Tax Court.

116.     Certain transfers of assets—namely, the transfer of the Farm to Magnus Veritas, LLC, and the Residence to GSC452, LLC—were made after commencement of litigation by Bluewater Media, LLC against Merrie Wycoff, Wycoff Financial, LLC, and Zap! Products, Inc.

117.     The foregoing transfers were organized and orchestrated by Merrie Wycoff, Wycoff Financial, LLC, GCS452, LLC, and Magnus Veritas to Midlab, Inc., and their legal counsel at BHFS with knowledge of Midlab, Inc.'s claims against Zap! Products, Inc. and Jeffrey Wycoff.

118.     The foregoing transfers proximately caused Midlab, Inc. damage in an amount to be determined at trial, currently estimated as being $841,121.90 plus interest, as well as $207,253.13, plus interest.

119.     Because Defendants engaged in the foregoing transfers with actual intent to hinder, delay, or defraud one or more creditors, specifically including Midlab, Inc., they are liable for additional statutory damages as set forth in C.R.S. §38-8-108(1)(c).

**SECOND CLAIM FOR RELIEF**
*Actual Fraud*
*Against Merrie Wycoff*

120.     All allegations set forth in this Complaint are incorporated by reference.

121.    Merrie Wycoff, together with her husband Jeffrey Wycoff, engaged in a scheme to defraud Midlab, Inc. and, particularly, to fraudulently persuade Midlab, Inc. to manufacture products for Zap! Products, Inc. on credit terms.

122.    In connection with their scheme to defraud Midlab, Inc., Merrie Wycoff and Jeffrey Wycoff, individually, as officers of Zap! Products, Inc., and as owners of Zap! Products, Inc. whether directly or indirectly through Wycoff Financial, LLC, prepared and provided to Midlab, Inc., through their legal counsel BHFS, a Statement of Financial Condition that they knew to be materially false and misleading and omitted material information they knew was necessary to make the information provided on the Statement of Financial Condition not materially false or misleading.

123.    The objective of Merrie Wycoff and Jeffrey Wycoff was to induce Midlab, Inc. to manufacture products for Zap! Products, Inc. on credit terms under the false impression that Jeffrey Wycoff's assets and liabilities were such that Midlab, Inc. would be assured payment by having Jeffrey Wycoff enter into the Guaranty.

124.    Merrie Wycoff's and Jeffrey Wycoff's false or materially misleading representations on the Statement of Financial Condition included, but were not necessarily limited to, statements that they owned the Farm and the Residence without disclosing that the Farm and Residence were owned by Wycoff Financial, LLC and the Wycoff Family Trust, respectively; statements about equity in those assets; statements about their tax liabilities without disclosing the true extent of their tax liabilities; and statements about the net worth of Jeffrey Wycoff and Merrie Wycoff. Jeffrey Wycoff and Merrie Wycoff made the false or materially misleading representations and omissions to give Midlab, Inc. the impression that Jeffrey Wycoff and Merrie Wycoff had substantial net worth, such that Jeffrey Wycoff's

execution of the Guaranty would provide security for Midlab, Inc.'s extension of credit to Jeffrey Wycoff and Merrie Wycoff's company, Zap! Products, Inc.

125.    It was, for example, false or materially misleading for Merrie Wycoff and Jeffrey Wycoff to represent to Midlab, Inc. on the Statement of Financial Condition that the Farm and Residence were assets of Jeffrey Wycoff when—if Merrie Wycoff's statements to Midlab, Inc. in August 2018 are to be regarded as true—the Farm and Residence were owned or titled in such a manner that they were not or would not necessarily be assets of Jeffrey Wycoff available for purposes of satisfying any indebtedness that Jeffrey Wycoff would owe to Midlab, Inc. under the Guaranty. To avoid the Statement of Financial Condition from being materially misleading, it was incumbent upon Jeffrey Wycoff and Merrie Wycoff either not to list the Farm and Residence on the Statement of Financial Condition or to disclose to Midlab, Inc. the circumstances or conditions that would limit the availability of the Farm and Residence as assets of Jeffrey Wycoff supporting the Guaranty, including without limitation ownership of assets through The Wycoff Family Trust, Wycoff Financial, LLC, and/or Zap! Holdings, LLC.

126.    Merrie Wycoff and Jeffrey Wycoff also fraudulently omitted from their Statement of Financial Condition that they owed substantial liabilities to the Internal Revenue Service. Jeffrey Wycoff and Merrie Wycoff were engaged in litigation with the Internal Revenue Service at least as early as August 2012, years before they provided the Statement of Financial Condition to Midlab, Inc., and they had knowledge of the deficiencies and accuracy-related penalties being assessed by the Internal Revenue Service.

127.    The deficiencies and accuracy-related penalties were material. For tax year 2001, the deficiency amount assessed by the Internal Revenue Service against Merrie Wycoff

and Jeffrey Wycoff was $4,511,398, and the accuracy-related penalty amount was $902,280. For 2002, the deficiency amount was $518,138, and the penalty amount was $103,628. These amounts were substantial in relation to the net worth of $11,582,000 that Jeffrey Wycoff and Merrie Wycoff represented to Midlab, Inc. on the Statement of Financial Condition.

128.    Had Merrie Wycoff and Jeffrey Wycoff disclosed these liabilities to Midlab, Inc., it would not have proceeded to extend credit to Zap! Products, Inc.

129.    Despite their knowledge, Merrie Wycoff and Jeffrey Wycoff chose to omit their liabilities to the Internal Revenue Service from the Statement of Financial Condition provided to Midlab, Inc. and did not list those liabilities even as contingent liabilities.

130.    Indeed, Merrie Wycoff and Jeffrey Wycoff made their Statement of Financial Condition affirmatively misleading insofar as they disclosed to Midlab, Inc. "Estimated Income Taxes" related solely to capital gains tax that they anticipated would be owed if assets listed on the statement were sold, yet they omitted the tax deficiencies and accuracy-related penalties that they knew the Internal Revenue Service had assessed.

131.    Merrie Wycoff's subsequent statements to Midlab, Inc. that Jeffrey Wycoff had no assets or insufficient assets to warrant opening a probate estate, assuming they were true, confirm that Merrie Wycoff and Jeffrey Wycoff did not have the substantial wealth they represented on the Statement of Financial Condition, or that their representations on the Statement of Financial Condition were materially misleading.

132.    Midlab, Inc. relied upon the Personal Financial Statement provided to it by BHFS as the attorney of and agent for Zap! Products, Jeffrey Wycoff, and Merrie Wycoff.

133.    Additionally or in the alternative, Merrie Wycoff, individually and through BHFS, knowingly made false or materially misleading representations to Midlab, Inc. that

27

Jeffrey Wycoff had insufficient assets at the time of his death to open a probate estate subject to Midlab, Inc.'s claim under the Guaranty. Merrie Wycoff and BHFS knew that representation to be false or materially misleading, in that she and BHFS knew that, prior to his death, Jeffrey Wycoff directly or indirectly owned assets that could be sold to pay Midlab, Inc. in satisfaction of the Guaranty. Merrie Wycoff, individually and through BHFS, made the false or materially misleading representations to Midlab, Inc. to induce Midlab, Inc. to forbear from taking action, such as pursuing any claims against Jeffrey Wycoff or taking action to petition that a probate estate be opened.

134.    Midlab, Inc. reasonably and justifiably relied upon the false representations and omissions of material fact that Merrie Wycoff and Jeffrey Wycoff made, and its reasonable and justifiable reliance proximately caused Midlab, Inc. damages in an amount to be proved at trial, currently estimated as being $841,121.90 plus interest, as well as $207,253.13, plus interest.

### THIRD CLAIM FOR RELIEF
*Civil Conspiracy*
*Against all Defendants*

135.    All allegations set forth in this Complaint are incorporated by reference.

136.    Defendants agreed among themselves and with persons not named herein as defendants, including specifically including but not necessarily limited to BHFS, Jeffrey Wycoff, and Azuraye Wycoff, by words or conduct or both, to achieve one or more unlawful goals, specifically including the unlawful goals of committing actual fraud upon Midlab, Inc. to induce Midlab, Inc. into extending credit to Zap! Products, Inc., and engaging in transfers or obligations in violation of the Uniform Fraudulent Transfer Act for the purpose of hindering, delaying, and

defrauding Midlab, Inc. as a creditor of one or more Defendants, including Zap! Products, Inc. Jeffrey Wycoff, Merrie Wycoff, and Wycoff Financial, LLC.

137.    Defendants, together with one or more persons not named as defendants herein, specifically including BHFS, Jeffrey Wycoff, and Azuraye Wycoff, performed one or more overt acts to accomplish their unlawful goals.

138.    Such acts included, without limitation, Merrie Wycoff, Jeffery Wycoff, and BHFS's formation of Wycoff Financial, LLC and Wycoff Holdings, LLC, as previously described; Merrie Wycoff, Azuraye Wycoff, and BHFS's formation of GCS452, LLC, and Magnus Veritas, LLC, as previously described; the preparation and execution of one or more legal instruments to transfer title to assets and recording of one or more legal instruments to facilitate transfers of assets in violation of the Uniform Fraudulent Transfer Act, as previously described; and the transfer of insurance policy ownership and change of beneficiary designations, as previously described. Such acts also included, without limitation, the preparation of the Statement of Financial Condition and the communication of the Statement of Financial Condition to Midlab, Inc., as well as the later making of representations to Midlab, Inc. that Jeffrey Wycoff had no assets or insufficient assets at the time of his death to open a probate estate, all as previously described, to facilitate the commission of actual fraud on Midlab, Inc.

139.    Defendants' actions in conspiracy against Midlab, Inc. proximately caused Midlab, Inc. damages in an amount to be proved at trial, currently estimated as being $841,121.90 plus interest, as well as $207,253.13, plus interest.

**FOURTH CLAIM FOR RELIEF**
*Promissory Estoppel*
*Against Wycoff Financial, LLC and Merrie Wycoff*

140.    All allegations set forth in this Complaint are incorporated by reference.

141.    Jeffrey Wycoff and Merrie Wycoff represented to Midlab, Inc. that the Farm was a valuable asset that they owned and that could be sold to pay Midlab, Inc.

142.    Jeffrey Wycoff, for himself and as an officer of Zap! Products, Inc., as an owner of Zap! Products, Inc. whether directly or through one or more intermediary companies, and as a member and manager of Wycoff Financial, LLC, and with the knowledge and assent of his wife Merrie Wycoff, repeatedly promised Midlab, Inc. that he and Merrie Wycoff were selling the Farm in order to pay the debt that Zap! Products, Inc. had incurred to Midlab, Inc.

143.    Jeffrey Wycoff, Merrie Wycoff, and Wycoff Financial, LLC knew or reasonably should have expected that the promises that the Farm was being sold in order to pay Zap! Products, Inc.'s debt to Midlab, Inc. would induce action or forbearance by Midlab, Inc.

144.    Midlab, Inc. reasonably relied upon the promises that Jeffrey Wycoff and Merrie Wycoff were selling the Farm in order to pay Zap! Products, Inc.'s debt to its detriment, including entering into a Second Amendment to Manufacturing and Supply Agreement on September 2, 2016, as well as forbearing from taking legal action against Zap! Products, Inc. and/or Jeffrey Wycoff.

145.    The promises and assurances that Jeffrey Wycoff and Merrie Wycoff were selling the Farm in order to pay Zap! Products, Inc.'s debt must be enforced to prevent injustice.

146.    Midlab, Inc. has been damaged by the failure of Jeffrey Wycoff, Merrie Wycoff, and Wycoff Financial, LLC to sell the Farm. Midlab, LLC's damages are currently estimated as being $841,121.90 plus interest, as well as $207,253.13, plus interest.

**FIFTH CLAIM FOR RELIEF**
*Unjust Enrichment and Constructive Trust*
*Against Merrie Wycoff, GSC452, LLC, and Magnus Veritas, LLC*

147.    All allegations set forth in this Complaint are incorporated by reference.

148.    Defendant Merrie Wycoff, together with her husband Jeffrey Wycoff, as owners and officers of Zap! Products, Inc., induced Midlab, Inc. to extend credit to Zap! Products, Inc., in order to enrich themselves at the expense of Midlab, Inc., and Merrie Wycoff did in fact enrich herself at the expense of Midlab, Inc.

149.    Under the circumstances, it would be unjust to permit Merrie Wycoff to retain the enrichment she received from Midlab, Inc. without compensation to Midlab, Inc.

150.    GSC452, LLC and Magnus Veritas, LLC also have been enriched at the expense of Midlab, Inc. insofar as they are transferees, for no consideration or inadequate consideration, of properties that Jeffrey Wycoff and Merrie Wycoff represented to Midlab, Inc. would be available to pay debts of Zap! Products, Inc. and Jeffrey Wycoff, and which Jeffrey Wycoff promised Midlab, Inc. orally and in writing were in the process of being sold and would be sold to pay such debts.

151.    Under the circumstances, it would be unjust to permit GSC452, LLC and Magnus Veritas, LLC to retain the properties that they received without compensation to Midlab, Inc.

152.    Prior to Wycoff Financial, LLC's transfer of the Farm to Magnus Veritas, LLC, Wycoff Financial, LLC held title to the Farm in constructive trust for the benefit of Midlab, Inc., based on Jeffrey Wycoff's promises and assurances to Midlab, Inc. that he and Merrie Wycoff were selling the Farm and would apply the sale proceeds to pay Midlab, Inc., and Midlab, Inc.'s reliance on those promises and assurances.

153.    GSC452, LLC and Magnus Veritas LLC's ownership of the Residence and the Farm, respectively, are ill-gotten gains from fraud and deceit, and the law requires that Midlab, Inc. have an equitable interest in the Residence and the Farm to avoid Defendants Merrie Wycoff, GSC452, LLC, and Magnus Veritas, LLC from benefitting from their wrongful conduct while leaving Midlab, Inc. without a complete remedy.

154.    Midlab, Inc. requests that the Court enter judgment for money damages against Merrie Wycoff, GSC452, LLC, and Magnus Veritas, LLC together with an order declaring that Defendants Merrie Wycoff GSC452, LLC and Magnus Veritas LLC, hold the Residence and the Farm in constructive trust for Midlab, Inc., and directing that the Residence and Farm or both be transferred to Midlab, Inc. or sold for the benefit of Midlab, Inc.

### Prayer for Relief

Plaintiff Midlab, Inc. prays for the following relief:

A.  An award of damages to be determined at trial, including, without limitation, any enhanced damages contemplated by the Uniform Fraudulent Transfer Act;

B.  An order setting aside the transfers of real property complained of herein;

C.  Any other remedy provided by the Uniform Fraudulent Transfer Act;

D.  The imposition of a constructive trust on the Residence and Farm;

E.  Statutory and mandatory interest on all sums awarded;

F.  An award of costs and attorney fees as may be awarded by applicable law; and

G.  Any other relief as is proper.

Dated: July 21, 2021

Respectfully submitted,

/s/ *Ross W. Pulkrabek*
Ross W. Pulkrabek
Aaron D. Goldhamer
Keating Wagner Polidori Free, PC
1290 Broadway, Suite 600
Denver, Colorado 80203
303.534.0401
rpulkrabek@keatingwagner.com
agoldhamer@keatingwagner.com

**Certificate of Service**

I hereby affirm that on May 17, 2021, I filed the foregoing through EM/ECF, effectuating electronic service on the following:

Steven Abelman
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
sabelman@bhfs.com
*Counsel for Defendants*

/s/      *Carly Daehnick*
Carly Daehnick