```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 1:20-cv-03142-DDD-KLM
 3    _____

 4    VIDEOTAPE DEPOSITION OF:   MERRIE WYCOFF
                                 August 26, 2021
 5                               (Via RemoteDepo)
      _____
 6
      MIDLAB, INC., a Tennessee Corporation,
 7
      Plaintiff,
 8
      v.
 9
      MERRIE PISANO WYCOFF individually and as trustee of
10    The Wycoff Family Trust; WYCOFF FINANCIAL, LLC, a
      Colorado Limited Liability Company; MAGNUS VERITAS
11    LLC, a Colorado Limited Liability Company; and GCS452,
      a Colorado Limited Liability Company,
12
      Defendants.
13    _____

14
              PURSUANT TO NOTICE, the videotape
15    deposition of MERRIE WYCOFF was taken on behalf of the
      Plaintiff in Longmont, Colorado, via remote means, on
16    August 26, 2021, at 9:07 a.m., before Tiffany D.
      Goulding, Registered Professional Reporter and Notary
17    Public within Colorado, appearing remotely from
      Arapahoe County, Colorado.
18

19

20

21

22

23

24

25
```

```
 1                  (Recess taken, 5:00 p.m. to 5:04 p.m.)
 2                  THE VIDEOGRAPHER:  We are back on the
 3     record.  The time is 11:04 p.m. UTC, 5:04 p.m.
 4     Mountain.
 5                  MR. PULKRABEK:  I think we need Dustin to
 6     read us back in.
 7                  MR. ABELMAN:  He just did.
 8                  MR. PULKRABEK:  I'm sorry.  I may have
 9     had my volume down too low.
10           Q.     (BY MR. PULKRABEK) All right.  We talked
11     about Devon in her work.  And Devon has not been an
12     employee of Zap! Products, has she?
13           A.     Yeah, I think she has.
14                  (Deposition Exhibit 183 was remotely
15     introduced and provided electronically to the court
16     reporter.)
17           Q.     Okay.  Let's look at Deposition
18     Exhibit 183, please.  See if I can bring this up.  So
19     as the president of Zap! Products, are you familiar
20     with its payroll?
21           A.     Somewhat.
22           Q.     All right.  We understand that there's
23     been no sales from Zap! Products since 2016; is that
24     accurate?
25           A.     I believe so.
```

Merrie Wycoff
August 26, 2021                                                                                         254

1    Q.   And that Zap! has essentially
2    discontinued business in 2016 and '17; is that
3    accurate?
4    A.   Yes.
5    Q.   Okay.  Now, I'm showing you what's been
6    marked as Deposition Exhibit 183.  And it's a
7    compilation of information from Gusto, which is a
8    payroll processing system.  And I'll kind of take you
9    down towards the end of this document that shows
10   Azuraye Wycoff reportedly working 120 hours a week for
11   Zap! Products in February of this year.  Is that
12   actually happening?
13   A.   Aja was just helping me pack up boxes.
14   And there's years and years and years of Zap! stuff.
15   And Aja helped me reorganize it and try to get rid of
16   some filing cabinets.
17   Q.   Is she working 120 hours a week -- or 120
18   hours a month?
19   A.   Probably not.
20   Q.   Go ahead.
21   A.   No, probably not.
22   Q.   Okay.  What about Devon Wycoff?  Is she
23   working 120 hours a month for Zap! Products?
24   A.   She was paid for it, but no.
25            (Deposition Exhibit 184 was remotely

1   introduced and provided electronically to the court
2   reporter.)
3        Q.   Okay.  And why do you have -- as the
4   president of Zap! Products, why do you have your
5   daughters on the payroll as working -- this is
6   Deposition Exhibit 184, by the way, for Devon Wycoff.
7   Why do you have your daughters working 120 hours a
8   month on the payroll for Zap!?
9        A.   For health insurance.
10       Q.   Okay.  So that kind of gets to my point.
11  Is it correct to say that when we see Devon Wycoff and
12  Azuraye Wycoff on the payroll of Zap! Products and
13  getting paid by or through Gusto, the reason for that
14  really has to do with health insurance?
15       A.   Yes.
16       Q.   And can you explain, why are you having
17  your daughters on Zap! Products payroll in order for
18  them to have health insurance?  Why can't they get
19  health insurance through the private market or some
20  other way?
21       A.   I was told that it's a requirement that
22  you turn in their health insurance.  Jeff had set all
23  this up for them to have health insurance through --
24  it's not State Farm.  I don't know what -- it's
25  Anthem, Blue Cross maybe.  It's one or the other.

```
 1   Jeff had set all this up years ago for them to be on
 2   this health insurance.  And Devon had some pretty
 3   specific needs that required specialists.
 4          Q.   Do you know if it's legal to report
 5   somebody as working 120 hours a month so that they
 6   could get health insurance if in fact they're not
 7   working?
 8          A.   I don't know if it's legal.  I paid for
 9   it.
10          Q.   Okay.  And then when this money gets
11   deposited, it goes into an account that is owned
12   jointly between you and Devon or you and Azuraye; is
13   that correct?
14          A.   The money goes into the Zap! account.
15   Aja pays for her health insurance.
16          Q.   Do we see -- part of what we've seen in
17   the bank records are there are deposits and
18   withdrawals going through an account, one of which is
19   held jointly by you and Azuraye.  Another account is
20   held jointly by you and Devon.
21          A.   Correct.
22          Q.   Is that all part of this payroll?  Is
23   that all part of this health insurance thing?
24          A.   Aja pays me monthly for her health
25   insurance.  Then I think it's through Zap! Products
```

1    Q.  Do you know where the payroll payments
2    that Zap! Products makes ostensibly for wages to
3    Azuraye Wycoff and Devon Wycoff are going?
4    A.  Say that again.  Do I know where they're
5    going?
6    Q.  Yeah.  Do you know where they get
7    deposited?
8    A.  I think at one time it was a direct
9    deposit to each of their accounts.
10   Q.  Okay.  Were those into joint accounts
11   that you held jointly with them?
12   A.  I think at one time they were jointly
13   joint.  I think Aja is now on Devon's and has been for
14   a while, and Devon's is on Aja's.
15   Q.  What does that mean, Devon's is on Aja's
16   and Aja's is on Devon's?  I don't understand that.
17   A.  In case of emergencies, which happen
18   often in my family, somebody needed to be responsible
19   to take care of bills or whatever.  And so Aja is now
20   a second on Devon's account and has been for a while,
21   and Devon is a second on Aja's account.
22   Q.  Has Devon ever worked 120 hours per week
23   for Zap!, ever?
24   A.  I think she might have done that when
25   Jeff was alive.  She was helping him do stuff.  I

```
 1    don't know what.
 2            Q.    Okay.  Not since 2019, though?
 3            A.    2019, no.
 4                  MR. PULKRABEK:  Tiffany, did we ever get
 5    a time count on this?
 6                  THE VIDEOGRAPHER:  So right now we are at
 7    six hours, 32 minutes on the record.
 8                  MR. PULKRABEK:  All right.
 9            Q.    (BY MR. PULKRABEK) Ms. Wycoff, have
10    you -- other than the tax court case, have you ever
11    testified before by deposition or in trial?
12            A.    Yes.
13            Q.    How many times?
14            A.    Oh, gosh.  I did for -- well, not in
15    trial.  I took a deposition for MSK and that whole
16    group.  I think I did when I was in my 20s.
17            Q.    What was that for?
18            A.    For Sheridan.
19            Q.    Any others?
20            A.    I can't remember if I went to trial for
21    anything else.
22            Q.    We talked earlier about the number of
23    claims that were brought against Jeffrey Wycoff and/or
24    any of the entities at or about the time of his death.
25    What claims do you recall there being?
```

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF COLORADO           )
                                 ) ss.
 3   COUNTY OF ARAPAHOE          )

 4             I, TIFFANY D. GOULDING, Registered
     Professional Reporter and Notary Public ID No.
 5   19984028637, State of Colorado, do hereby certify that
     previous to the commencement of the examination, the
 6   said MERRIE WYCOFF verbally declared that her
     testimony is under the penalty of perjury in relation
 7   to the matters in controversy between the parties
     hereto; that the said deposition was taken in machine
 8   shorthand by me at the time and place aforesaid and
     was thereafter reduced to typewritten form; that the
 9   foregoing is a true transcript of the questions asked,
     testimony given, and proceedings had.
10
               I further certify that I am not employed
11   by, related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of
12   this litigation.

13             IN WITNESS WHEREOF, I have affixed my
     signature this _____ day of _____,
14   2021.

15             My commission expires November 4, 2022.

16   x____  Reading and Signing was requested.

17   _____  Reading and Signing was waived.

18   _____  Reading and Signing is not required.

19

20
                              _____
21                            Tiffany Goulding
                              Registered Professional Reporter
22

23

24

25
```