Robert Henke
August 11, 2021

```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
```

Civil Action No. 1:20-cv-03142-DDD-KLM
_

REMOTE VIDEOTAPED DEPOSITION OF:
ROBERT HENKE - August 11, 2021


MIDLAB, INC., a Tennessee Corporation,

Plaintiff,

v.

Merrie Pisano Wycoff, individually and as trustee of
The Wycoff Family Trust; Wycoff Financial, LLC, a
Colorado Limited Liability Company; Magnus Veritas,
LLC, a Colorado Limited Liability Company; and
GCS452LLC, a Colorado Limited Liability Company,

Defendants.


          PURSUANT TO NOTICE, the Videotaped Deposition
of ROBERT HENKE was taken on behalf of the Plaintiff on
August 11, 2021, at 10:00 a.m., Mountain Time, via
RemoteDepo, before Jacquelyn R. Gallo, Registered
Professional Reporter and Notary Public within
Colorado, appearing remotely from Adams County,
Colorado.

Robert Henke
August 11, 2021

1   activity for the year?  This includes an odd deposit of
2   16.47 and otherwise all deposits are from you to pay
3   Anthem, Gusto, a couple FedEx's and some bank charges.
4   Let me know, please."  Do you see that?
5       A.    I see that.
6       Q.    All right.  So what year are you referring to
7   in this paragraph when you ask whether this was the
8   entirety included in the banking activity for the year?
9       A.    Given the date of the email, I would be
10  guessing that I was talking about 2020.
11      Q.    All right.  So when you looked at the Zap!
12  Products activity for 2020, what do you recall seeing?
13      A.    What do I recall seeing regarding my request
14  for information or --
15      Q.    Well --
16      A.    I probably had seen something provided by her
17  or the person who was keeping the books as to probably
18  a trial balance or something like.
19      Q.    Let me ask it a different way.  Since you did
20  the 2020 income tax return for Zap! Products, what do
21  you recall about that tax return and what it showed as
22  to Zap!'s activities in 2020?
23      A.    Little to no activity.
24      Q.    Okay.  Do you know what Gusto is?
25      A.    Do I know what what is?

```
 1        Q.    Gusto, referred to in this paragraph.
 2        A.    Gusto, what is Gusto?  Gusto is -- I don't
 3   know.  Is that a payment processor?  I would have to
 4   look it up.
 5        Q.    If I told you --
 6        A.    Yeah, go ahead.
 7        Q.    If I told you it was a payroll processor,
 8   would that sound right to you?
 9        A.    It could be, yes, uh-huh.
10        Q.    Okay.  And do you know, who was on Anthem?
11        A.    I don't know specifically, but I believe it
12   is Merrie and possibly the girls.
13        Q.    Can you explain, if you know, what is going
14   on with Zap! Products in regard to Merrie Wycoff making
15   deposits into Zap! to pay Anthem and Gusto?
16        A.    I believe that she makes deposits into Zap!
17   to maintain the health insurance plan that they have
18   with Anthem.  I don't know if Gusto is a method of
19   keeping track of that or -- I don't know that but --
20        Q.    All right.  Is there any tax advantage to
21   Merrie Wycoff, Azuraye Wycoff and/or Devon Wycoff if
22   Merrie Wycoff is paying their insurance through Zap!?
23        A.    Is there any tax advantage?  I suppose if you
24   went out to the point where they got to use the benefit
25   of whatever net operating loss is being accumulated
```

```
 1    there, then yes, there would be some benefit, not
 2    currently.
 3         Q.    All right.  Further up on this same email, on
 4    June 16, 2021, you send an email to Steve Abelman,
 5    where you say, "I am collecting the various years'
 6    information relative to Zap! Products, Inc.  I have
 7    attached a copy of the federal income tax return for
 8    2017, which you mentioned you did not have."  And then,
 9    "It appears that Zap! had no sales beyond 2016 and any
10    recognized income beyond that year was apparently a
11    result of payables or loans being forgiven."  Do you
12    see that?
13         A.    Yes, uh-huh.
14         Q.    So based on your review, is it correct that
15    Zap! has had no sales since sometime in 2016?
16         A.    Correct.
17         Q.    And would it be correct to say that, based on
18    your review, it hasn't been operating since 2016?
19         A.    Yeah, it's -- I suppose the technical answer
20    is it's not had sales.
21         Q.    Okay.  Has it had any revenues since 2016?
22         A.    Well, that is what I was asking about in the
23    previous part of one of these emails as to a small
24    deposit that was not a deposit from Merrie, whether
25    that was income or not.  I don't know that.  I don't
```

```
 1    believe they had any sales beyond 2016.
 2         Q.    You're familiar having reviewed the
 3    financials of Zap! with its income, expenses, assets
 4    and liabilities, at least in a broad sense, would that
 5    be fair?
 6         A.    That would be fair to say.
 7         Q.    When, if ever, has -- have the assets of Zap!
 8    exceeded its liabilities, if you know?
 9         A.    I don't know that.
10         Q.    By 2017, would it be fair to say that Zap!'s
11    liabilities exceeded its assets?
12         A.    Yes.
13         Q.    How about in 2016?
14         A.    I think, from what I recall, that would be a
15    fair statement.
16         Q.    All right.  Are you aware that Zap! has a
17    number of unpaid liabilities?
18         A.    I am aware of some unpaid liabilities, yes.
19         Q.    Do you know when the last time Zap! was able
20    through income to service its liabilities in a timely
21    manner?
22         A.    I don't know that, but I would speculate it
23    was 2016.
24         Q.    Is -- today is Zap! insolvent, to your
25    knowledge?
```

Robert Henke
August 11, 2021

```
 1      A.     I would suggest yes.
 2      Q.     Do you -- was it insolvent in 2020?
 3      A.     I would suggest yes.
 4      Q.     What about in 2019?
 5      A.     Yes.
 6      Q.     What about in 2018?
 7      A.     Yes.
 8      Q.     What about in 2017?
 9      A.     I am not sure there.
10      Q.     Okay.  What about 2016?
11      A.     I am not sure there either.
12      Q.     All right.  So considering -- you would agree
13   that it's been insolvent since 2018, and perhaps
14   earlier than that?
15      A.     Yeah, I think, by definition, you're calling
16   insolvency assets that don't exceed liabilities.
17      Q.     That would be one definition.
18      A.     That is the one I am using.
19      Q.     Okay.  So based on assets less than
20   liabilities, Zap! has been insolvent at least since
21   2018?
22      A.     I believe so, yes.
23      Q.     What about Zap!'s ability to service its
24   debts in the due course, if you use that definition of
25   insolvency, do you know when the last time Zap! was
```

1   solvent?

2       A.      I, again, would be speculating it was 2016.

3       Q.      Okay.  Let me switch gears here.  I am going

4   to ask you about a couple other documents, starting

5   with 85.  I don't have a lot of questions about this,

6   but I would like you to confirm that Exhibit 85 is a

7   document from your files that you produced in response

8   to our subpoena.

9       A.      Yes, that looks like something I provided.

10      Q.      All right.  Do you have -- can you just

11  explain how this particular letter came to be in your

12  files?  Why do you have it, if you know?

13      A.      I am going to read the letter.  I think I

14  surprised myself when I found it in the file.  I am not

15  sure why I have it, except for perhaps the market value

16  was something that we were changing on the financial

17  statement.  I don't know.  I might have been provided

18  that just to confirm something we had used or would be

19  using for valuation on the form.

20      Q.      Have you ever spoken with Karen Bernardi?

21      A.      No.

22      Q.      Or anybody from the Bernardi Real Estate

23  Group?

24      A.      No.

25      Q.      All right.  Same questions with respect to

```
 1                    REPORTER'S CERTIFICATE

 2    STATE OF COLORADO            )
                                   )  ss.
 3    CITY AND COUNTY OF DENVER    )

 4             I, JACQUELYN R. GALLO, a Registered
      Professional Reporter and a Notary Public ID
 5    20034039981, State of Colorado, do hereby certify that
      previous to the commencement of the examination, the
 6    said ROBERT HENKE verbally declared his testimony in
      this matter is under penalty of perjury; that the said
 7    deposition was taken in machine shorthand by me at the
      time and place aforesaid and was thereafter reduced to
 8    typewritten form; that the foregoing is a true
      transcript of the questions asked, testimony given, and
 9    proceedings had.

10             I further certify that I am not employed by,
      related to, nor of counsel for any of the parties
11    herein, nor otherwise interested in the outcome of this
      litigation.
12
               IN WITNESS WHEREOF, I have affixed my
13    signature this 20th day of August, 2021.

14             My commission expires November 24, 2023.

15    _X_ Reading and Signing was requested.

16    ___ Reading and Signing was waived.

17    ___ Reading and Signing is not required.

18
                   _____
19                 JACQUELYN R. GALLO
                   Registered Professional Reporter
20

21

22

23

24

25
```