

**Coldwell Banker Res-CanyonBlvd**
2700 Canyon Blvd. #200
Boulder, CO 80302
Phone: (303) 449-5000 Fax: (303) 449-6969

---

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (LC50-8-13) (Mandatory 1-14)

---

THIS IS A BINDING CONTRACT. THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

Compensation charged by brokerage firms is not set by law. Such charges are established by each real estate brokerage firm.

DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE BUYER AGENCY, SELLER AGENCY OR TRANSACTION-BROKERAGE.

# EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT

☒ **SELLER AGENCY** ☐ **TRANSACTION-BROKERAGE**

Date: *June 13, 2016*

1. **AGREEMENT.** Seller and Brokerage Firm enter into this exclusive, irrevocable contract (Seller Listing Contract) and agree to its provisions. Broker, on behalf of Brokerage Firm, agrees to provide brokerage services to Seller. Seller agrees to pay Brokerage Firm as set forth in this Seller Listing Contract.

2. **BROKER AND BROKERAGE FIRM.**
   ☒ 2.1. **Multiple-Person Firm.** If this box is checked, the individual designated by Brokerage Firm to serve as the broker of Seller and to perform the services for Seller required by this Seller Listing Contract is called Broker. If more than one individual is so designated, then references in this Seller Listing Contract to Broker include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm or to any other brokers employed or engaged by Brokerage Firm who are not so designated.
   ☐ 2.2. **One-Person Firm.** If this box is checked, Broker is a real estate brokerage firm with only one licensed natural person. References in this Seller Listing Contract to Broker or Brokerage Firm mean both the licensed natural person and brokerage firm who serve as the broker of Seller and perform the services for Seller required by this Seller Listing Contract.

3. **DEFINED TERMS.**

   3.1. Seller: *Jeffrey Wycoff and Merrie Pisano Wycoff*

   3.2. Brokerage Firm: *Coldwell Banker Residential Brokerage*

   3.3. Broker: *Karen Bernardi*

   3.4. Property. The Property is the following legally described real estate in the County of *Boulder*, Colorado:
   *OUTLOT B MOUNTAIN RIDGE CONSERVATION EASEMENT REC #1041472*

   known as No. *9417 N Foothills Hwy*  *Boulder*  *CO*  *80302*
   Street Address  City  State  Zip

   together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

   3.5. Sale; Lease.
       3.5.1. A Sale is the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease. It also includes an agreement to transfer any ownership interest in an entity which owns the Property.
   ☐ 3.5.2. If this box is checked, Seller authorizes Broker to negotiate leasing the Property. Lease of the Property or Lease means any agreement between the Seller and a tenant to create a tenancy or leasehold interest in the Property.

---

LC50-8-13. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT  6/13/2016 17:09  Page 1 of 9

EXHIBIT E  Seller initials _____

44  **3.6. Listing Period.** The Listing Period of this Seller Listing Contract begins on **June 13, 2016**, and
45  continues through the earlier of (1) completion of the Sale of the Property or (2) **February 14, 2017**, and
46  any written extensions (Listing Period). Broker must continue to assist in the completion of any Sale or Lease for which
47  compensation is payable to Brokerage Firm under § 7 of this Seller Listing Contract.
48  **3.7. Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation
49  "N/A" or the word "Deleted" means not applicable. The abbreviation "MEC" (mutual execution of this contract) means the date upon
50  which both parties have signed this Seller Listing Contract.
51  **3.8 Day; Computation of Period of Days, Deadline.**
52      **3.8.1. Day.** As used in this Seller Listing Contract, the term "day" means the entire day ending at 11:59 p.m., United
53  States Mountain Time (Standard or Daylight Savings as applicable).
54      **3.8.2. Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not
55  specified, the first day is excluded and the last day is included, e.g., three days after MEC. If any deadline falls on a Saturday,
56  Sunday or federal or Colorado state holiday (Holiday), such deadline ☒ Will ☐ Will Not be extended to the next day that is not
57  a Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

58  **4. BROKERAGE RELATIONSHIP.**
59      **4.1.** If the Seller Agency box at the top of page 1 is checked, Broker represents Seller as a Seller's limited agent (Seller's
60  Agent). If the Transaction-Brokerage box at the top of page 1 is checked, Broker acts as a Transaction-Broker.
61      **4.2. In-Company Transaction – Different Brokers.** When Seller and buyer in a transaction are working with different
62  brokers, those brokers continue to conduct themselves consistent with the brokerage relationships they have established. Seller
63  acknowledges that Brokerage Firm is allowed to offer and pay compensation to brokers within Brokerage Firm working with a
64  buyer.
65      **4.3. In-Company Transaction – One Broker.** If Seller and buyer are both working with the same broker, Broker must
66  function as:
67          **4.3.1. Seller's Agent.** If the Seller Agency box at the top of page 1 is checked, the parties agree the following applies:
68              **4.3.1.1. Seller Agency Only.** Unless the box in § 4.3.1.2 (Seller Agency Unless Brokerage Relationship
69  with Both) is checked, Broker represents Seller as Seller's Agent and must treat the buyer as a customer. A customer is a party to
70  a transaction with whom Broker has no brokerage relationship. Broker must disclose to such customer Broker's relationship with
71  Seller.
72  ☒          **4.3.1.2. Seller Agency Unless Brokerage Relationship with Both.** If this box is checked, Broker
73  represents Seller as Seller's Agent and must treat the buyer as a customer, unless Broker currently has or enters into an agency or
74  Transaction-Brokerage relationship with the buyer, in which case Broker must act as a Transaction-Broker.
75          **4.3.2. Transaction-Broker.** If the Transaction-Brokerage box at the top of page 1 is checked, or in the event neither
76  box is checked, Broker must work with Seller as a Transaction-Broker. A Transaction-Broker must perform the duties described in
77  § 5 and facilitate sales transactions without being an advocate or agent for either party. If Seller and buyer are working with the
78  same broker, Broker must continue to function as a Transaction-Broker.

79  **5. BROKERAGE DUTIES.** Brokerage Firm, acting through Broker, as either a Transaction-Broker or a Seller's Agent, must
80  perform the following **Uniform Duties** when working with Seller:
81      **5.1.** Broker must exercise reasonable skill and care for Seller, including, but not limited to the following:
82          **5.1.1.** Performing the terms of any written or oral agreement with Seller;
83          **5.1.2.** Presenting all offers to and from Seller in a timely manner regardless of whether the Property is subject to a
84  contract for Sale;
85          **5.1.3.** Disclosing to Seller adverse material facts actually known by Broker;
86          **5.1.4.** Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters
87  about which Broker knows but the specifics of which are beyond the expertise of Broker;
88          **5.1.5.** Accounting in a timely manner for all money and property received; and
89          **5.1.6.** Keeping Seller fully informed regarding the transaction.
90      **5.2.** Broker must not disclose the following information without the informed consent of Seller:
91          **5.2.1.** That Seller is willing to accept less than the asking price for the Property;
92          **5.2.2.** What the motivating factors are for Seller to sell the Property;
93          **5.2.3.** That Seller will agree to financing terms other than those offered;
94          **5.2.4.** Any material information about Seller unless disclosure is required by law or failure to disclose such
95  information would constitute fraud or dishonest dealing; or
96          **5.2.5.** Any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property.
97      **5.3.** Seller consents to Broker's disclosure of Seller's confidential information to the supervising broker or designee for the
98  purpose of proper supervision, provided such supervising broker or designee does not further disclose such information without
99  consent of Seller, or use such information to the detriment of Seller.

LC50-8-13. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT   6/13/2016 17:09

Seller initials

Page 2 of 9

EXHIBIT E

100  5.4. Brokerage Firm may have agreements with other sellers to market and sell their property. Broker may show alternative
101  properties not owned by Seller to other prospective buyers and list competing properties for sale.
102  5.5. Broker is not obligated to seek additional offers to purchase the Property while the Property is subject to a contract for
103  Sale.
104  5.6. Broker has no duty to conduct an independent inspection of the Property for the benefit of a buyer and has no duty to
105  independently verify the accuracy or completeness of statements made by Seller or independent inspectors. Broker has no duty to
106  conduct an independent investigation of a buyer's financial condition or to verify the accuracy or completeness of any statement
107  made by a buyer.
108  5.7. Seller understands that Seller is not liable for Broker's acts or omissions that have not been approved, directed or
109  ratified by Seller.
110  5.8. When asked, Broker ☒ Will ☐ Will Not disclose to prospective buyers and cooperating brokers the existence of
111  offers on the Property and whether the offers were obtained by Broker, a broker within Brokerage Firm or by another broker.

112  **6. ADDITIONAL DUTIES OF SELLER'S AGENT.** If the Seller Agency box at the top of page 1 is checked, Broker is
113  Seller's Agent, with the following additional duties:
114  6.1. Promoting the interests of Seller with the utmost good faith, loyalty and fidelity;
115  6.2. Seeking a price and terms that are set forth in this Seller Listing Contract; and
116  6.3. Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.

117  **7. COMPENSATION TO BROKERAGE FIRM; COMPENSATION TO COOPERATIVE BROKER.** Seller agrees that
118  any Brokerage Firm compensation that is conditioned upon the Sale of the Property will be earned by Brokerage Firm as set forth
119  herein without any discount or allowance for any efforts made by Seller or by any other person in connection with the Sale of the
120  Property.
121  7.1. Amount. In consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows:
122  7.1.1. Sale Commission. (1) _6% and $259 Coldwell Banker Fee_ % of the gross purchase price or (2)
123  _____, in U.S. dollars.
124  7.1.2. Lease Commission. If the box in § 3.5.2 is checked, Brokerage Firm will be paid a fee equal to (1) ____ % of
125  the gross rent under the lease, or (2) _____, in U.S. dollars, payable
126  as follows: _____.
127  7.1.3. Other Compensation. _____.
128  7.2. Cooperative Broker Compensation. Brokerage Firm offers compensation to outside brokerage firms, whose brokers
129  are acting as:
130  ☒ Buyer Agents: _2.8_ % of the gross sales price or _____, in U.S. dollars.
131  ☒ Transaction-Brokers: _2.8_ % of the gross sales price or _____, in U.S. dollars.
132  7.3. When Earned. Such commission is earned upon the occurrence of any of the following:
133  7.3.1. Any Sale of the Property within the Listing Period by Seller, by Broker or by any other person;
134  7.3.2. Broker finding a buyer who is ready, willing and able to complete the Sale or Lease as specified in this Seller
135  Listing Contract; or
136  7.3.3. Any Sale (or Lease if § 3.5.2 is checked) of the Property within _120_ calendar days after the Listing
137  Period expires (Holdover Period) (1) to anyone with whom Broker negotiated and (2) whose name was submitted, in writing, to
138  Seller by Broker during the Listing Period (Submitted Prospect). Provided, however, Seller ☒ Will ☐ Will Not owe the
139  commission to Brokerage Firm under this § 7.3.3 if a commission is earned by another licensed real estate brokerage firm acting
140  pursuant to an exclusive agreement entered into during the Holdover Period and a Sale or Lease to a Submitted Prospect is
141  consummated. If no box is checked in this § 7.3.3, then Seller does not owe the commission to Brokerage Firm.
142  7.4. When Applicable and Payable. The commission obligation applies to a Sale made during the Listing Period or any
143  extension of such original or extended term. The commission described in § 7.1.1 is payable at the time of the closing of the Sale,
144  or, if there is no closing (due to the refusal or neglect of Seller) then on the contracted date of closing, as contemplated by § 7.3.1
145  or § 7.3.3, or upon fulfillment of § 7.3.2 where the offer made by such buyer is not accepted by Seller.

146  **8. LIMITATION ON THIRD-PARTY COMPENSATION.** Neither Broker nor Brokerage Firm, except as set forth in § 7,
147  will accept compensation from any other person or entity in connection with the Property without the written consent of Seller.
148  Additionally, neither Broker nor Brokerage Firm is permitted to assess or receive mark-ups or other compensation for services
149  performed by any third party or affiliated business entity unless Seller signs a separate written consent for such services.

150  **9. OTHER BROKERS' ASSISTANCE, MULTIPLE LISTING SERVICES AND MARKETING.** Seller has been advised
151  by Broker of the advantages and disadvantages of various marketing methods, including advertising and the use of multiple listing

DocuSign Envelope ID: DDB9D231-02E3-4618-9D87-A64BEF40ECDA

152 services (MLS) and various methods of making the Property accessible by other brokerage firms (e.g., using lock boxes, by-
153 appointment-only showings, etc.) and whether some methods may limit the ability of another broker to show the Property. After
154 having been so advised, Seller has chosen the following:
155     **9.1. MLS/Information Exchange.**
156         9.1.1. The Property [X] Will [ ] Will Not be submitted to one or more MLS and [X] Will [ ] Will Not be submitted
157 to one or more property information exchanges. If submitted, Seller authorizes Broker to provide timely notice of any status
158 change to such MLS and information exchanges. Upon transfer of deed from Seller to buyer, Seller authorizes Broker to provide
159 sales information to such MLS and information exchanges.
160         9.1.2. Seller authorizes the use of electronic and all other marketing methods except: _____.
161         9.1.3. Seller further authorizes use of the data by MLS and property information exchanges, if any.
162         9.1.4. The Property Address [X] Will [ ] Will Not be displayed on the Internet.
163         9.1.5. The Property Listing [X] Will [ ] Will Not be displayed on the Internet.
164     **9.2. Property Access.** Access to the Property may be by:
165     [X] Manual Lock Box     [ ] Electronic Lock Box
166     [ ] _____
167     Other instructions: _____
168     **9.3. Broker Marketing.** The following specific marketing tasks will be performed by Broker:
169 *See the Bernardi Group Marketing Plan*
170
171

172 **10. SELLER'S OBLIGATIONS TO BROKER; DISCLOSURES AND CONSENT.**
173     **10.1. Negotiations and Communication.** Seller agrees to conduct all negotiations for the Sale of the Property only through
174 Broker, and to refer to Broker all communications received in any form from real estate brokers, prospective buyers, tenants or any
175 other source during the Listing Period of this Seller Listing Contract.
176     **10.2. Advertising.** Seller agrees that any advertising of the Property by Seller (e.g., Internet, print and signage) must first be
177 approved by Broker.
178     **10.3. No Existing Listing Agreement.** Seller represents that Seller [ ] Is [X] Is Not currently a party to any listing
179 agreement with any other broker to sell the Property.
180     **10.4. Ownership of Materials and Consent.** Seller represents that all materials (including all photographs, renderings,
181 images or other creative items) supplied to Broker by or on behalf of Seller are owned by Seller, except as Seller has disclosed in
182 writing to Broker. Seller is authorized to and grants to Broker, Brokerage Firm and any MLS (that Broker submits the Property to)
183 a nonexclusive, irrevocable, royalty-free license to use such material for marketing of the Property, reporting as required and the
184 publishing, display and reproduction of such material, compilation and data. This license survives the termination of this Seller
185 Listing Contract.
186     **10.5. Colorado Foreclosure Protection Act.** The Colorado Foreclosure Protection Act (Act) generally applies if (1) the
187 Property is residential (2) Seller resides in the Property as Seller's principal residence (3) Buyer's purpose in purchase of the
188 Property is not to use the Property as Buyer's personal residence and (4) the Property is in foreclosure or Buyer has notice that any
189 loan secured by the Property is at least thirty days delinquent or in default. If all requirements 1, 2, 3 and 4 are met and the Act
190 otherwise applies, then a contract, between Buyer and Seller for the sale of the Property, that complies with the provisions of the
191 Act is required. If the transaction is a Short Sale transaction and a Short Sale Addendum is part of the Contract between Seller and
192 Buyer, the Act does not apply. It is recommended that Seller consult with an attorney.

193 **11. PRICE AND TERMS.** The following Price and Terms are acceptable to Seller:
194     **11.1. Price.** U.S. $ *5,850,000*
195     **11.2. Terms.** [X] Cash [X] Conventional [ ] FHA [ ] VA [ ] Other: _____
196     **11.3. Loan Discount Points.** _____
197     **11.4. Buyer's Closing Costs (FHA/VA).** Seller must pay closing costs and fees, not to exceed $ _____, that Buyer
198 is not allowed by law to pay, for tax service and _____.
199     **11.5. Earnest Money.** Minimum amount of earnest money deposit U.S. $ *200,000* in the form of *personal check*
200     **11.6. Seller Proceeds.** Seller will receive net proceeds of closing as indicated: [ ] Cashier's Check at Seller's expense;
201 [ ] Funds Electronically Transferred (Wire Transfer) to an account specified by Seller, at Seller's expense; or [X] Closing
202 Company's Trust Account Check.
203     **11.7. Advisory: Tax Withholding.** The Internal Revenue Service and the Colorado Department of Revenue may require
204 closing company to withhold a substantial portion of the proceeds of this Sale when Seller either (1) is a foreign person or (2) will
205 not be a Colorado resident after closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an
206 exemption exists.

---

LC50-8-13. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT    6/13/2016 17:09              Page 4 of 9

EXHIBIT E                          Seller initials _____

12. **DEPOSITS.** Brokerage Firm is authorized to accept earnest money deposits received by Broker pursuant to a proposed Sale contract. Brokerage Firm is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the Sale contract.

13. **INCLUSIONS AND EXCLUSIONS.**

   13.1. **Inclusions.** The Purchase Price includes the following items (Inclusions):

   13.1.1. **Fixtures.** The following items are included if attached to the Property on the date of this Seller Listing Contract, unless excluded under Exclusions (§ 13.2): lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including *Any* remote controls.
   **Other Fixtures:** *TBD*

   If any fixtures are attached to the Property after the date of this Seller Listing Contract, such additional fixtures are also included in the Purchase Price.

   13.1.2. **Personal Property.** The following items are included if on the Property, whether attached or not, on the date of this Seller Listing Contract, unless excluded under Exclusions (§ 13.2): storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following are included: ☐ Water Softeners ☒ Smoke/Fire Detectors ☒ Carbon Monoxide Alarms ☐ Security Systems ☐ Satellite Systems (including satellite dishes); and

   The Personal Property to be conveyed at closing must be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except _____. Conveyance will be by bill of sale or other applicable legal instrument.

   13.1.3. **Trade Fixtures.** The following trade fixtures are included: _____
   The Trade Fixtures to be conveyed at closing must be conveyed by Seller, free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except _____. Conveyance will be by bill of sale or other applicable legal instrument.

   13.1.4. **Parking and Storage Facilities.** ☐ Use Only ☒ Ownership of the following parking facilities: _____; and ☐ Use Only ☐ Ownership of the following storage facilities: _____.

   13.1.5. **Water Rights.** The following legally described water rights: _____

   Any water rights must be conveyed by *n/a* deed or other applicable legal instrument. The Well Permit # is _____.

   13.1.6. **Growing Crops.** The following growing crops: _____

   13.2. **Exclusions.** The following are excluded (Exclusions): *TBD*

14. **TITLE AND ENCUMBRANCES.** Seller represents to Broker that title to the Property is solely in Seller's name. Seller must deliver to Broker true copies of all relevant title materials, leases, improvement location certificates and surveys in Seller's possession and must disclose to Broker all easements, liens and other encumbrances, if any, on the Property, of which Seller has knowledge. Seller authorizes the holder of any obligation secured by an encumbrance on the Property to disclose to Broker the amount owing on said encumbrance and the terms thereof. In case of Sale, Seller agrees to convey, by a *General Warranty* deed, only that title Seller has in the Property. Property must be conveyed free and clear of all taxes, except the general taxes for the year of closing.

All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) must be paid by Seller and released except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows: _____.

The Property is subject to the following leases and tenancies: _____

If the Property has been or will be subject to any governmental liens for special improvements installed at the time of signing

261     a Sale contract, Seller is responsible for payment of same, unless otherwise agreed.

262    **15. EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense, unless the parties agree in writing to a different
263     arrangement, a current commitment and an owner's title insurance policy in an amount equal to the Purchase Price as specified in
264     the Sale contract, or if this box is checked, ☐ **An Abstract of Title** certified to a current date.

265    **16. ASSOCIATION ASSESSMENTS.** Seller represents that the amount of the regular owners' association assessment is
266     currently payable at approximately $_____ per _____ and that there are no unpaid regular or special assessments against
267     the Property except the current regular assessments and except _____. Seller agrees to promptly
268     request the owners' association to deliver to buyer before date of closing a current statement of assessments against the Property.

269    **17. POSSESSION.** Possession of the Property will be delivered to buyer as follows: *TBD*,
270     subject to leases and tenancies as described in § 14.

271    **18. MATERIAL DEFECTS, DISCLOSURES AND INSPECTION.**
272      **18.1. Broker's Obligations.** Colorado law requires a broker to disclose to any prospective buyer all adverse material facts
273     actually known by such broker including but not limited to adverse material facts pertaining to the title to the Property and the
274     physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which
275     are required by law to be disclosed. These types of disclosures may include such matters as structural defects, soil conditions,
276     violations of health, zoning or building laws, and nonconforming uses and zoning variances. Seller agrees that any buyer may have
277     the Property and Inclusions inspected and authorizes Broker to disclose any facts actually known by Broker about the Property.
278      **18.2. Seller's Obligations.**
279       **18.2.1. Seller's Property Disclosure Form.** Disclosure of known material latent (not obvious) defects is required by
280     law. Seller ☒ **Agrees** ☐ **Does Not Agree** to provide a Seller's Property Disclosure form completed to Seller's current, actual
281     knowledge.
282       **18.2.2. Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential
283     dwellings for which a building permit was issued prior to January 1, 1978, a completed Lead-Based Paint Disclosure (Sales) form
284     must be signed by Seller and the real estate licensees, and given to any potential buyer in a timely manner.
285       **18.2.3. Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater or appliance, a
286     fireplace, or an attached garage and one or more rooms lawfully used for sleeping purposes (Bedroom), Seller understands that
287     Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the
288     entrance to each Bedroom or in a location as required by the applicable building code, prior to offering the Property for sale or lease.
289       **18.2.4. Condition of Property.** The Property will be conveyed in the condition existing as of the date of the sales
290     contract or lease, ordinary wear and tear excepted, unless Seller, at Seller's sole option, agrees in writing to any repairs or other
291     work to be performed by Seller.
292

293    **19. RIGHT OF PARTIES TO CANCEL.**
294      **19.1. Right of Seller to Cancel.** In the event Broker defaults under this Seller Listing Contract, Seller has the right to cancel
295     this Seller Listing Contract, including all rights of Brokerage Firm to any compensation if the Seller Agency box is checked.
296     Examples of a Broker default include, but are not limited to (1) abandonment of Seller, (2) failure to fulfill all material obligations
297     of Broker and (3) failure to fulfill all material Uniform Duties (§ 5) or, if the Seller Agency box at the top of page 1 if checked, the
298     failure to fulfill all material Additional Duties Of Seller's Agent (§ 6). Any rights of Seller that accrued prior to cancellation will
299     survive such cancellation.
300      **19.2. Right of Broker to Cancel.** Brokerage Firm may cancel this Seller Listing Contract upon written notice to Seller that
301     title is not satisfactory to Brokerage Firm. Although Broker has no obligation to investigate or inspect the Property, and no duty to
302     verify statements made, Brokerage Firm has the right to cancel this Seller Listing Contract if any of the following are
303     unsatisfactory (1) the physical condition of the Property or Inclusions, (2) any proposed or existing transportation project, road,
304     street or highway, (3) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the
305     Property or its occupants, or (4) if any facts or suspicions regarding circumstances that could psychologically impact or stigmatize
306     the Property. Additionally, Brokerage Firm has the right to cancel this Seller Listing Contract if Seller or occupant of the Property
307     fails to reasonably cooperate with Broker or Seller defaults under this Seller Listing Contract. Any rights of Brokerage Firm that
308     accrued prior to cancellation will survive such cancellation.

309    **20. FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received will be
310     divided between Brokerage Firm and Seller, one-half thereof to Brokerage Firm but not to exceed the Brokerage Firm
311     compensation agreed upon herein, and the balance to Seller. Any forfeiture of payment under this section will not reduce any
312     Brokerage Firm compensation owed, earned and payable under § 7.

313 21. **COST OF SERVICES AND REIMBURSEMENT.** Unless otherwise agreed upon in writing, Brokerage Firm must bear all
314 expenses incurred by Brokerage Firm, if any, to market the Property and to compensate cooperating brokerage firms, if any.
315 Neither Broker nor Brokerage Firm will obtain or order any other products or services unless Seller agrees in writing to pay for
316 them promptly when due (examples: surveys, radon tests, soil tests, title reports, engineering studies, property inspections). Unless
317 otherwise agreed, neither Broker nor Brokerage Firm is obligated to advance funds for Seller. Seller must reimburse Brokerage
318 Firm for payments made by Brokerage Firm for such products or services authorized by Seller.

319 22. **DISCLOSURE OF SETTLEMENT COSTS.** Seller acknowledges that costs, quality, and extent of service vary between
320 different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

321 23. **MAINTENANCE OF THE PROPERTY.** Neither Broker nor Brokerage Firm is responsible for maintenance of the
322 Property nor are they liable for damage of any kind occurring to the Property, unless such damage is caused by their negligence or
323 intentional misconduct.

324 24. **NONDISCRIMINATION.** The parties agree not to discriminate unlawfully against any prospective buyer because of the
325 race, creed, color, sex, sexual orientation, marital status, familial status, physical or mental disability, handicap, religion, national
326 origin or ancestry of such person.

327 25. **RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Seller acknowledges that Broker
328 has advised that this document has important legal consequences and has recommended consultation with legal and tax or other
329 counsel before signing this Seller Listing Contract.

330 26. **MEDIATION.** If a dispute arises relating to this Seller Listing Contract, prior to or after closing, and is not resolved, the
331 parties must first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an
332 impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The
333 parties to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable
334 mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, will terminate in the event
335 the entire dispute is not resolved within 30 calendar days of the date written notice requesting mediation is delivered by one party
336 to the other at the other party's last known address.

337 27. **ATTORNEY FEES.** In the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court
338 must award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

339 28. **ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
340 Commission.)
341 A. POSSESSION OF THE PROPERTY. Seller acknowledges that the Seller has been made
aware that the traditional practice in Colorado is that possession of the property
is often maintained by Seller for one or more days after closing in order to permit
Seller to move out of the Property. Seller must, however, negotiate the length of
time, if any, that the Seller desires to retain possession of the Property after
closing with the Buyer as part of the contract negotiation process. Seller is advised
to seek expert advice regarding insurance and other matters relating to Seller maintaining
possession after closing.

B. AFFILIATED BUSINESS RELATIONSHIPS.
1. Broker has made Seller aware that Broker offers homeowner's warranty programs
through an affiliate. Seller has elected to not obtain the Coldwell Banker Home
Protection Plan provided by American Home Shield Corporation.

2. Broker has made Seller aware that Broker offers mortgage loan products and services
through an affiliate. Seller has elected to not obtain mortgage loan products and
services through PHH Home Loans, LLC, d/b/a Coldwell Banker Home Loans.

3. Broker has made Seller aware that Broker offers title insurance services and
products through an Affiliate. Seller hereby authorizes Broker to order title insurance
for the Property from Guardian Title Agency, LLC. Seller understands that Broker
and Guardian are affiliated companies.

---

LC50-8-13. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT 6/13/2016 17:09 Page 7 of 9

EXHIBIT E  Seller initials _____

C. The Bernardi Real Estate Group consists of Karen Bernardi, Melanie Miller, Corrine Lopez, Bobby Kelley, Madison Spraitz, and Emily Lytle.

D. In the event of multiple offers, Escalation Clauses will not be considered by the seller.

E. Sellers have the right to terminate with 30 days notice if dissatisfied with performance of listing agent.

29. **ATTACHMENTS.** The following are a part of this Seller Listing Contract:

30. **NO OTHER PARTY OR INTENDED BENEFICIARIES.** Nothing in this Seller Listing Contract is deemed to inure to the benefit of any person other than Seller, Broker and Brokerage Firm.

31. **NOTICE, DELIVERY AND CHOICE OF LAW.**
    31.1. **Physical Delivery.** All notices must be in writing, except as provided in § 31.2. Any document, including a signed document or notice, delivered to the other party to this Seller Listing Contract, is effective upon physical receipt. Delivery to Seller is effective when physically received by Seller, any signator on behalf of Seller, any named individual of Seller or representative of Seller.
    31.2. **Electronic Delivery.** As an alternative to physical delivery, any document, including any signed document or written notice, may be delivered in electronic form only by the following indicated methods: ☒ Facsimile ☒ Email ☒ Internet. If no box is checked, this § 31.2 is not applicable and § 31.1 governs notice and delivery. Documents with original signatures will be provided upon request of any party.
    31.3. **Choice of Law.** This Seller Listing Contract and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in this state for property located in Colorado.

32. **MODIFICATION OF THIS SELLER LISTING CONTRACT.** No subsequent modification of any of the terms of this Seller Listing Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

33. **COUNTERPARTS.** This Seller Listing Contract may be executed by each of the parties, separately, and when so executed by all the parties, such copies taken together are deemed to be a full and complete contract between the parties.

34. **ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties, and any prior agreements, whether oral or written, have been merged and integrated into this Seller Listing Contract.

35. **COPY OF CONTRACT.** Seller acknowledges receipt of a copy of this Seller Listing Contract signed by Broker, including all attachments.

Brokerage Firm authorizes Broker to execute this Seller Listing Contract on behalf of Brokerage Firm.

Seller's Name: *Jeffrey Wycoff and Merrie Pisano Wycoff*

Seller's Signature *Jeffrey Wycoff*　　　　Date 6-15-16

Seller's Signature *Merrie Pisano Wycoff*　　　　Date 6-15-16

DocuSign Envelope ID: DDB9D231-02E3-4618-9D87-A64BEF40ECDA

| | |
|---|---|
| Address: | 9417 Foothills Hwy |
| | Longmont, CO 80503 |
| Phone No.: | |
| Fax No.: | |
| Electronic Address: | |
| Broker's Name: | Karen Bernardi |
| Broker's Signature: | 6/13/14 Date |
| Address: | 2700 Canyon Blvd, Suite 200 |
| | Boulder, CO 80302 |
| Phone No.: | 303-402-6000 |
| Fax No.: | 303-442-5778 |
| Electronic Address: | officecoordinator@bernardirealestate.com |
| Brokerage Firm's Name: | Coldwell Banker Residential Brokerage |
| Address: | 2700 Canyon Blvd, Suite 200, Boulder, CO 80302 |
| Phone No.: | 303-402-6000 |
| Fax No.: | 303-442-5778 |
| Electronic Address: | |

370

LC50-8-13. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT   6/13/2016 17:09   Seller initials _____   Page 9 of 9

EXHIBIT E

BERNARDI WYCOFF 000009