Colo Landmark, Realtors - Niwot
136 2nd Ave, Suite C - P.O. Box 814
Niwot, CO 80544
Phone: (303)652-8800 Fax: (303)652-8900

| | |
|---|---|
| 1 | The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. |
| 2 | (CBS2-6-15) (Mandatory 1-16) |

4  **THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR**
5  **OTHER COUNSEL BEFORE SIGNING.**

7  # CONTRACT TO BUY AND SELL REAL ESTATE
8  # (INCOME - RESIDENTIAL)
9  ( [X] **1-4 Units**    [ ] **Larger than 1-4 Units** )

11 Date: *March 5, 2018*

12 **AGREEMENT**

13 **1. AGREEMENT.** Buyer agrees to buy and Seller agrees to sell, the Property described below on the terms and conditions set
14 forth in this contract (Contract).

15 **2. PARTIES AND PROPERTY.**
16 **2.1. Buyer.** Buyer, *Caerleon, LLC*,
17 will take title to the Property described below as [ ] **Joint Tenants** [ ] **Tenants In Common** [X] **Other** *N/A*.
18 **2.2. No Assignability.** This Contract **Is Not** assignable by Buyer unless otherwise specified in **Additional Provisions**.

20 **2.3. Seller.** Seller, *Wycoff Financial, LLC*, is
21 the current owner of the Property described below.
22 **2.4. Property.** The Property is the following legally described real estate in the County of *Boulder*, Colorado:
23 *Outlot B Mountain Ridge Conservation Easement Rec #1041472 see also ID 68290 and Lot 1,*
*Block 2, Mountain Ridge*

28 known as No. *9417 Foothills*       *Longmont*       *Colorado*       *80503*       ,
              Street Address              City             State           Zip

30 together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of
31 Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).

33 **2.5. Inclusions.** The Purchase Price includes the following items (Inclusions):
34 **2.5.1. Inclusions - Attached.** If attached to the Property on the date of this Contract, the following items are
35 included unless excluded under **Exclusions**: lighting, heating, plumbing, ventilating and air conditioning units, TV antennas, inside
36 telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems,
37 built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers
38 (including *all remotes* remote controls). If checked, the following are owned by the Seller and included (leased items should
   be listed
39 under **Due Diligence Documents**): [ ] **None** [ ] **Solar Panels** [X] **Water Softeners** [X] **Security Systems** [ ] **Satellite Systems**
40 (including satellite dishes). If any additional items are attached to the Property after the date of this Contract, such additional items
41 are also included in the Purchase Price.
42 **2.5.2. Inclusions - Not Attached.** If on the Property, whether attached or not, on the date of this Contract, the
43 following items are included unless excluded under **Exclusions**: storm windows, storm doors, window and porch shades, awnings,
44 blinds, screens, window coverings and treatments, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates,
45 heating stoves, storage sheds, carbon monoxide alarms, smoke/fire detectors and all keys.
46 **2.5.3. Personal Property - Conveyance.** Any personal property must be conveyed at Closing by Seller free and

---

CBS2-6-15. CONTRACT TO BUY AND SELL REAL ESTATE (INCOME - RESIDENTIAL)   3/5/2018 14:56           Page 1 of 20

Buyer initials _____           EXHIBIT G   Seller initials _____ Wycoff000005

47 clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except N/A.
48 Conveyance of all personal property will be by bill of sale or other applicable legal instrument.
49     **2.5.4. Other Inclusions.** The following items, whether fixtures or personal property, are also included in the
50 Purchase Price:
51 *Seller shall supply within 10 days of Contract Acceptence a complete list of*
52 *inclusions with the property.*

56     **2.5.5. Parking and Storage Facilities.** ☐ Use Only ☒ **Ownership** of the following parking facilities:
57 *N/A*; and ☐ Use Only ☒ **Ownership** of the following storage facilities: *All structures and improvements on the property..*
58     **2.6. Exclusions.** The following items are excluded (Exclusions):
59 *Personal property of seller and tenants.  Seller will supply a complete list all personal property being excluded from the sale (all personal property of Seller and other occupants of the property) within 10 days after Contract acceptance.*

61     **2.7. Water Rights, Well Rights, Water and Sewer Taps.**
62 ☒     **2.7.1. Deeded Water Rights.** The following legally described water rights:
63 *Left Hand Ditch Company 43 shares.*

65 Any deeded water rights will be conveyed by a good and sufficient *Assignment of Left Hand Ditch Company stock certificate for 43 shares, bill of sale and special warranty* deed at Closing.
66 ☒     **2.7.2. Other Rights Relating to Water.** The following rights relating to water not included in §§2.7.1, 2.7.3,
67 2.7.4 and 2.7.5, will be transferred to Buyer at Closing:
68 *all wells, ponds and springs on the property.  3 Left Hand Water taps.*

70 ☒     **2.7.3. Well Rights.** Seller agrees to supply required information to Buyer about the well. Buyer understands that
71 if the well to be transferred is a "Small Capacity Well" or a "Domestic Exempt Water Well", used for ordinary household
72 purposes, Buyer must, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been
73 registered with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer must
74 complete a registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing
75 service in connection with the transaction, Buyer must file the form with the Division within sixty days after Closing. The Well
76 Permit # is _____ *[to be complete by Seller].  If Seller does not have a Well Permit or otherwise has not registered the well on the Property, Seller shall do so, at Seller's expe[nse] prior to the Inspection Objection Deadline..*
77 ☒     **2.7.4. Water Stock Certificates.** The water stock certificates to be transferred at Closing are as follows:
78 *Left Hand Ditch Company 43 shares of Capital Stock*

81     **2.7.5. Conveyance.** If Buyer is to receive any rights to water pursuant to § 2.7.2 (Other Rights Relating to Water),
82 § 2.7.3 (Well Rights), or § 2.7.4 (Water Stock Certificates), Seller agrees to convey such rights to Buyer by executing the
83 applicable legal instrument at Closing.

84 **3. DATES AND DEADLINES.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | *March 19, 2018* |
| | | **Title** | |
| 2 | § 8.1 | Record Title Deadline | *March 27, 2018* |
| 3 | § 8.2 | Record Title Objection Deadline | *April 17, 2018* |
| 4 | § 8.3 | Off-Record Title Deadline | *March 27, 2018* |
| 5 | § 8.3 | Off-Record Title Objection Deadline | *April 17, 2018* |

| | | | |
|---|---|---|---|
| 6 | § 8.4 | Title Resolution Deadline | April 20, 2018 |
| 7 | § 8.6 | Right of First Refusal Deadline | N/A |
| | | **Owners' Association** | |
| 8 | § 7.3 | Association Documents Deadline | N/A |
| 9 | § 7.4 | Association Documents Objection Deadline | N/A |
| | | **Seller's Property Disclosure** | |
| 10 | § 10.1 | Seller's Property Disclosure Deadline | March 21, 2018 |
| | | **Loan and Credit** | |
| 11 | § 5.1 | Loan Application Deadline | March 23, 2018 |
| 12 | § 5.2 | Loan Objection Deadline | May 10, 2018 |
| 13 | § 5.3 | Buyer's Credit Information Deadline | N/A |
| 14 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | N/A |
| 15 | § 5.4 | Existing Loan Documents Deadline | N/A |
| 16 | § 5.4 | Existing Loan Documents Objection Deadline | N/A |
| 17 | § 5.4 | Loan Transfer Approval Deadline | N/A |
| 18 | § 4.7 | Seller or Private Financing Deadline | N/A |
| | | **Appraisal** | |
| 19 | § 6.2 | Appraisal Deadline | April 30, 2018 |
| 20 | § 6.2 | Appraisal Objection Deadline | May 2, 2018 |
| 21 | § 6.2 | Appraisal Resolution Deadline | May 7, 2018 |
| | | **Survey** | |
| 22 | § 9.1 | New ILC or New Survey Deadline | April 13, 2018 |
| 23 | § 9.3 | New ILC or New Survey Objection Deadline | April 17, 2018 |
| 24 | § 9.4 | New ILC or New Survey Resolution Deadline | April 20, 2018 |
| | | **Inspection and Due Diligence** | |
| 25 | § 10.3 | Inspection Objection Deadline | April 27, 2018 |
| 26 | § 10.3 | Inspection Resolution Deadline | May 4, 2018 |
| 27 | § 10.5 | Property Insurance Objection Deadline | April 27, 2018 |
| 28 | § 10.6 | Due Diligence Documents Delivery Deadline | April 13, 2018 |
| 29 | § 10.6 | Due Diligence Documents Objection Deadline | April 20, 2018 |
| 30 | § 10.6 | Due Diligence Documents Resolution Deadline | April 25, 2018 |
| 31 | § 10.6 | Environmental Inspection Objection Deadline | April 25, 2018 |
| 32 | § 10.6 | ADA Evaluation Objection Deadline | N/A |
| 33 | § 10.7 | Conditional Sale Deadline | N/A |
| 34 | § 11.1 | Tenant Estoppel Statements Deadline | April 13, 2018 |
| 35 | § 11.2 | Tenant Estoppel Statements Objection Deadline | April 18, 2018 |
| | | **Closing and Possession** | |
| 36 | § 12.3 | Closing Date | May 15, 2018 |
| 37 | § 17 | Possession Date | May 15, 2018 |
| 38 | § 17 | Possession Time | At a Successful Closing |
| 39 | § 28 | **Acceptance Deadline Date** | March 15, 2018 |
| 40 | § 28 | **Acceptance Deadline Time** | 5:00 PM |
| | N/A | Agreement on Lease Back Terms from Seller | April 20, 2018 |
| | N/A | N/A | N/A |

85   Note: If **FHA** or **VA** loan boxes are checked in § 4.5.3 (Loan Limitations), the **Appraisal** deadlines do **Not** apply to **FHA** insured
86   or **VA** guaranteed loans.

87        **3.1.   Applicability of Terms.** Any box checked in this Contract means the corresponding provision applies. Any box,
88   blank or line in this Contract left blank or completed with the abbreviation "N/A", or the word "Deleted" means such provision,
89   including any deadline, is not applicable and the corresponding provision of this Contract to which reference is made is deleted. If
90   no box is checked in a provision that contains a selection of "None", such provision means that "None" applies.

91  The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.
92
93  **4. PURCHASE PRICE AND TERMS.**
94      **4.1. Price and Terms.** The Purchase Price set forth below is payable in U.S. Dollars by Buyer as follows:

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | Purchase Price | $ 3,300,000. | |
| 2 | § 4.3 | Earnest Money | | $ 50,000 |
| 3 | § 4.5 | New Loan | | $ 2,310,000 |
| 4 | § 4.6 | Assumption Balance | | N/A |
| 5 | § 4.7 | Private Financing | | N/A |
| 6 | § 4.7 | Seller Financing | | N/A |
| 7 | N/A | N/A | N/A | N/A |
| 8 | N/A | N/A | N/A | N/A |
| 9 | § 4.4 | Cash at Closing | | $ 940,000 |
| 10 | | TOTAL | $ 3,300,000 | $ 3,300,000 |

95      **4.2. Seller Concession.** At Closing, Seller will credit to Buyer $ *0* (Seller Concession). The Seller
96  Concession may be used for any Buyer fee, cost, charge or expenditure to the extent the amount is allowed by the Buyer's lender
97  and is included in the Closing Statement or Closing Disclosure, at Closing. Examples of allowable items to be paid for by the
98  Seller Concession include, but are not limited to: Buyer's closing costs, loan discount points, loan origination fees, prepaid items
99  and any other fee, cost, charge, expense or expenditure. Seller Concession is in addition to any sum Seller has agreed to pay or
100 credit Buyer elsewhere in this Contract.
101     **4.3. Earnest Money.** The Earnest Money set forth in this section, in the form of a *Check*, will be
102 payable to and held by *Land Title Boulder* (Earnest Money Holder), in its trust account, on behalf of
103 both Seller and Buyer. The Earnest Money deposit must be tendered, by Buyer, with this Contract unless the parties mutually
104 agree to an **Alternative Earnest Money Deadline** for its payment. The parties authorize delivery of the Earnest Money deposit to
105 the company conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money Holder has
106 agreed to have interest on Earnest Money deposits transferred to a fund established for the purpose of providing affordable housing
107 to Colorado residents, Seller and Buyer acknowledge and agree that any interest accruing on the Earnest Money deposited with the
108 Earnest Money Holder in this transaction will be transferred to such fund.
109     **4.3.1. Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at the
110 time of tender of this Contract, is as set forth as the **Alternative Earnest Money Deadline**.
111     **4.3.2. Return of Earnest Money.** If Buyer has a Right to Terminate and timely terminates, Buyer is entitled to
112 the return of Earnest Money as provided in this Contract. If this Contract is terminated as set forth in § 25 and, except as provided
113 in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate, Seller agrees to execute
114 and return to Buyer or Broker working with Buyer, written mutual instructions (e.g., Earnest Money Release form), within three
115 days of Seller's receipt of such form.
116     **4.4. Form of Funds; Time of Payment; Available Funds.**
117     **4.4.1. Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds, Cash at Closing
118 and closing costs, must be in funds that comply with all applicable Colorado laws, including electronic transfer funds, certified
119 check, savings and loan teller's check and cashier's check (Good Funds).
120     **4.4.2. Time of Payment; Available Funds.** All funds, including the Purchase Price to be paid by Buyer, must be
121 paid before or at Closing or as otherwise agreed in writing between the parties to allow disbursement by Closing Company at
122 Closing **OR SUCH NONPAYING PARTY WILL BE IN DEFAULT**. Buyer represents that Buyer, as of the date of this
123 Contract, ☐ Does ☒ **Does Not** have funds that are immediately verifiable and available in an amount not less than the amount
124 stated as Cash at Closing in § 4.1.
125     **4.5. New Loan.**
126     **4.5.1. Buyer to Pay Loan Costs.** Buyer, except as provided in § 4.2, if applicable, must timely pay Buyer's loan
127 costs, loan discount points, prepaid items and loan origination fees, as required by lender.
128     **4.5.2. Buyer May Select Financing.** Buyer may pay in cash or select financing appropriate and acceptable to
129 Buyer, including a different loan than initially sought, except as restricted in § 4.5.3 or § 30 (Additional Provisions).
130     **4.5.3. Loan Limitations.** Buyer may purchase the Property using any of the following types of loans:
131 ☐ Conventional ☐ FHA ☐ VA ☐ Bond ☒ Other *Buyer & Lender will determine*.
132     **4.5.4. Good Faith Estimate – Monthly Payment and Loan Costs.** Buyer is advised to review the terms, conditions
133 and costs of Buyer's New Loan carefully. If Buyer is applying for a residential loan, the lender generally must provide Buyer with

134  a good faith estimate of Buyer's closing costs within three days after Buyer completes a loan application. Buyer also should obtain
135  an estimate of the amount of Buyer's monthly mortgage payment.
136  **4.6. Assumption.** OMITTED AS INAPPLICABLE.

149  **4.7. Seller or Private Financing.** OMITTED AS INAPPLICABLE.

166  **TRANSACTION PROVISIONS**

167  **5. FINANCING CONDITIONS AND OBLIGATIONS.**
168  **5.1. Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more new loans (New
169  Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such lender, must make an application verifiable
170  by such lender, on or before **Loan Application Deadline** and exercise reasonable efforts to obtain such loan or approval.
171  **5.2. Loan Objection.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is conditional
172  upon Buyer determining, in Buyer's sole subjective discretion, whether the New Loan is satisfactory to Buyer, including its
173  availability, payments, interest rate, terms, conditions, and cost of such New Loan. This condition is for the sole benefit of Buyer.
174  Buyer has the Right to Terminate under § 25.1, on or before **Loan Objection Deadline**, if the New Loan is not satisfactory to
175  Buyer, in Buyer's sole subjective discretion. **IF SELLER IS NOT IN DEFAULT AND DOES NOT TIMELY RECEIVE**
176  **BUYER'S WRITTEN NOTICE TO TERMINATE, BUYER'S EARNEST MONEY WILL BE NONREFUNDABLE,** except
177  as otherwise provided in this Contract (e.g., Appraisal, Title, Survey).
178  **5.3. Credit Information.** If an existing loan is not to be released at Closing, this Contract is conditional (for the sole
179  benefit of Seller) upon Seller's approval of Buyer's financial ability and creditworthiness, which approval will be at Seller's sole
180  subjective discretion. Accordingly: (1) Buyer must supply to Seller by **Buyer's Credit Information Deadline**, at Buyer's
181  expense, information and documents (including a current credit report) concerning Buyer's financial, employment and credit
182  condition; (2) Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; and (3) any such information
183  and documents received by Seller must be held by Seller in confidence, and not released to others except to protect Seller's interest
184  in this transaction. If the Cash at Closing is less than as set forth in § 4.1 of this Contract, Seller has the Right to Terminate under
185  § 25.1, on or before Closing. If Seller disapproves of Buyer's financial ability or creditworthiness, in Seller's sole subjective
186  discretion, Seller has the Right to Terminate under § 25.1, on or before **Disapproval of Buyer's Credit Information Deadline**.
187  **5.4. Existing Loan Review.** If an existing loan is not to be released at Closing, Seller must deliver copies of the loan
188  documents (including note, deed of trust, and any modifications) to Buyer by **Existing Loan Documents Deadline**. For the sole
189  benefit of Buyer, this Contract is conditional upon Buyer's review and approval of the provisions of such loan documents. Buyer
190  has the Right to Terminate under § 25.1, on or before **Existing Loan Documents Objection Deadline**, based on any
191  unsatisfactory provision of such loan documents, in Buyer's sole subjective discretion. If the lender's approval of a transfer of the
192  Property is required, this Contract is conditional upon Buyer's obtaining such approval without change in the terms of such loan,
193  except as set forth in § 4.6. If lender's approval is not obtained by **Loan Transfer Approval Deadline**, this Contract will
194  terminate on such deadline. Seller has the Right to Terminate under § 25.1, on or before Closing, in Seller's sole subjective
195  discretion, if Seller is to be released from liability under such existing loan and Buyer does not obtain such compliance as set forth
196  in § 4.6.

197  **6. APPRAISAL PROVISIONS.**
198  **6.1. Appraisal Definition.** An "Appraisal" is an opinion of value prepared by a licensed or certified appraiser, engaged
199  on behalf of Buyer or Buyer's lender, to determine the Property's market value (Appraised Value). The Appraisal may also set
200  forth certain lender requirements, replacements, removals or repairs necessary on or to the Property as a condition for the Property
201  to be valued at the Appraised Value.
202  **6.2. Appraisal Condition.** The applicable appraisal provision set forth below applies to the respective loan type set forth
203  in § 4.5.3, or if a cash transaction (i.e. no financing), § 6.2.1 applies.
204  **6.2.1. Conventional/Other.** Buyer has the right to obtain an Appraisal. If the Appraised Value is less than the
205  Purchase Price, or if the Appraisal is not received by Buyer on or before **Appraisal Deadline** Buyer may, on or before **Appraisal**
206  **Objection Deadline**, notwithstanding § 8.3 or § 13:
207  **6.2.1.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or
208  **6.2.1.2. Appraisal Objection.** Deliver to Seller a written objection accompanied by either a copy of the
209  Appraisal or written notice from lender that confirms the Appraisal value is less than the Purchase Price.
210  **6.2.1.3. Appraisal Resolution.** If an Appraisal Objection is received by Seller, on or before **Appraisal**
211  **Objection Deadline**, and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Appraisal Resolution**
212  **Deadline** (§ 3), this Contract will terminate on the **Appraisal Resolution Deadline**, unless Seller receives Buyer's written
213  withdrawal of the Appraisal Objection before such termination, i.e., on or before expiration of **Appraisal Resolution Deadline**.

**6.2.2. FHA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money deposits or otherwise unless the purchaser (Buyer) has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender, setting forth the appraised value of the Property of not less than $ N/A. The purchaser (Buyer) shall have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and condition of the Property are acceptable.

**6.2.3. VA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer) shall not incur any penalty by forfeiture of Earnest Money or otherwise or be obligated to complete the purchase of the Property described herein, if the Contract Purchase Price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.

**6.3. Lender Property Requirements.** If the lender imposes any requirements, replacements, removals or repairs, including any specified in the Appraisal (Lender Requirements) to be made to the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, Seller has the Right to Terminate under § 25.1, (notwithstanding § 10 of this Contract), on or before three days following Seller's receipt of the Lender Requirements, in Seller's sole subjective discretion. Seller's Right to Terminate in this § 6.3 does not apply if, on or before any termination by Seller pursuant to this § 6.3: (1) the parties enter into a written agreement regarding the Lender requirements; or (2) the Lender Requirements have been completed; or (3) the satisfaction of the Lender Requirements is waived in writing by Buyer.

**6.4. Cost of Appraisal.** Cost of the Appraisal to be obtained after the date of this Contract must be timely paid by ☒ **Buyer** ☐ **Seller.** The cost of the Appraisal may include any or all fees paid to the appraiser, appraisal management company, lender's agent or all three.

**7. OWNERS' ASSOCIATION.** This Section is applicable if the Property is located within a Common Interest Community and subject to such declaration.

**7.1. Common Interest Community Disclosure.** THE PROPERTY IS LOCATED WITHIN A COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR THE COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF THE OWNERS' ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY THE DEBT. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION.

**7.2. Owners' Association Documents.** Owners' Association Documents (Association Documents) consist of the following:

**7.2.1.** All Owners' Association declarations, articles of incorporation, bylaws, articles of organization, operating agreements, rules and regulations, party wall agreements;

**7.2.2.** Minutes of most recent annual owners' meeting;

**7.2.3.** Minutes of any directors' or managers' meetings during the six-month period immediately preceding the date of this Contract. If none of the preceding minutes exist, then the most recent minutes, if any (§§ 7.2.1, 7.2.2 and 7.2.3, collectively, Governing Documents); and

**7.2.4.** The most recent financial documents which consist of: (1) annual and most recent balance sheet, (2) annual and most recent income and expenditures statement, (3) annual budget, (4) reserve study, and (5) notice of unpaid assessments, if any (collectively, Financial Documents).

**7.3. Association Documents to Buyer.**

**7.3.1. Seller to Provide Association Documents.** Seller is obligated to provide to Buyer the Association Documents, at Seller's expense, on or before **Association Documents Deadline.** Seller authorizes the Association to provide the

270 Association Documents to Buyer, at Seller's expense. Seller's obligation to provide the Association Documents is fulfilled upon
271 Buyer's receipt of the Association Documents, regardless of who provides such documents.
272     **7.4. Conditional on Buyer's Review.** Buyer has the right to review the Association Documents. Buyer has the Right to
273 Terminate under § 25.1, on or before **Association Documents Objection Deadline**, based on any unsatisfactory provision in any
274 of the Association Documents, in Buyer's sole subjective discretion. Should Buyer receive the Association Documents after
275 **Association Documents Deadline**, Buyer, at Buyer's option, has the Right to Terminate under § 25.1 by Buyer's Notice to
276 Terminate received by Seller on or before ten days after Buyer's receipt of the Association Documents. If Buyer does not receive
277 the Association Documents, or if Buyer's Notice to Terminate would otherwise be required to be received by Seller after **Closing**
278 **Date**, Buyer's Notice to Terminate must be received by Seller on or before Closing. If Seller does not receive Buyer's Notice to
279 Terminate within such time, Buyer accepts the provisions of the Association Documents as satisfactory, and Buyer waives any
280 Right to Terminate under this provision, notwithstanding the provisions of § 8.6 (Right of First Refusal or Contract Approval).

281 **8. TITLE INSURANCE, RECORD TITLE AND OFF-RECORD TITLE.**
282     **8.1. Evidence of Record Title.**
283     ☒     **8.1.1. Seller Selects Title Insurance Company.** If this box is checked, Seller will select the title insurance
284 company to furnish the owner's title insurance policy at Seller's expense. On or before **Record Title Deadline**, Seller must furnish
285 to Buyer, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase
286 Price, or if this box is checked, ☐ an **Abstract of Title** certified to a current date. Seller will cause the title insurance policy to be
287 issued and delivered to Buyer as soon as practicable at or after Closing.
288     ☐     **8.1.2. Buyer Selects Title Insurance Company.** If this box is checked, Buyer will select the title insurance
289 company to furnish the owner's title insurance policy at Buyer's expense. On or before **Record Title Deadline**, Buyer must
290 furnish to Seller, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase
291 Price.
292 If neither box in § 8.1.1 or § 8.1.2 is checked, § 8.1.1 applies.

293     **8.1.3. Owner's Extended Coverage (OEC).** The Title Commitment ☒ **Will** ☐ **Will Not** contain Owner's
294 Extended Coverage (OEC). If the Title Commitment is to contain OEC, it will commit to delete or insure over the standard
295 exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4) unrecorded mechanics'
296 liens, (5) gap period (period between the effective date and time of commitment to the date and time the deed is recorded), and (6)
297 unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing. Any additional premium expense to obtain OEC
298 will be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **Other** N/A.
299 Regardless of whether the Contract requires OEC, the Title Insurance Company may not provide OEC or delete or insure over
300 any or all of the standard exceptions for OEC. The Title Insurance Company may require a New Survey or New ILC, defined
301 below, among other requirements for OEC. If the Title Insurance Commitment is not satisfactory to Buyer, Buyer has a right to
302 object under § 8.4 (Right to Object to Title, Resolution).
303     **8.1.4. Title Documents.** Title Documents consist of the following: (1) copies of any plats, declarations,
304 covenants, conditions and restrictions burdening the Property, and (2) copies of any other documents (or, if illegible, summaries of
305 such documents) listed in the schedule of exceptions (Exceptions) in the Title Commitment furnished to Buyer (collectively, Title
306 Documents).
307     **8.1.5. Copies of Title Documents.** Buyer must receive, on or before **Record Title Deadline**, copies of all Title
308 Documents. This requirement pertains only to documents as shown of record in the office of the clerk and recorder in the county
309 where the Property is located. The cost of furnishing copies of the documents required in this Section will be at the expense of the
310 party or parties obligated to pay for the owner's title insurance policy.
311     **8.1.6. Existing Abstracts of Title.** Seller must deliver to Buyer copies of any abstracts of title covering all or any
312 portion of the Property (Abstract of Title) in Seller's possession on or before **Record Title Deadline**.
313     **8.2. Record Title.** Buyer has the right to review and object to the Abstract of Title or Title Commitment and any of the
314 Title Documents as set forth in § 8.4 (Right to Object to Title, Resolution) on or before **Record Title Objection Deadline**.
315 Buyer's objection may be based on any unsatisfactory form or content of Title Commitment or Abstract of Title, notwithstanding
316 § 13, or any other unsatisfactory title condition, in Buyer's sole subjective discretion. If the Abstract of Title, Title Commitment or
317 Title Documents are not received by Buyer on or before the **Record Title Deadline**, or if there is an endorsement to the Title
318 Commitment that adds a new Exception to title, a copy of the new Exception to title and the modified Title Commitment will be
319 delivered to Buyer. Buyer has until the earlier of Closing or ten days after receipt of such documents by Buyer to review and object
320 to: (1) any required Title Document not timely received by Buyer, (2) any change to the Abstract of Title, Title Commitment or
321 Title Documents, or (3) any endorsement to the Title Commitment. If Seller receives Buyer's Notice to Terminate or Notice of
322 Title Objection, pursuant to this § 8.2 (Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.4
323 (Right to Object to Title, Resolution). If Seller has fulfilled all Seller's obligations, if any, to deliver to Buyer all documents
324 required by § 8.1 (Evidence of Record Title) and Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection

325  by the applicable deadline specified above, Buyer accepts the condition of title as disclosed by the Abstract of Title, Title
326  Commitment and Title Documents as satisfactory.
327      **8.3. Off-Record Title.** Seller must deliver to Buyer, on or before **Off-Record Title Deadline**, true copies of all existing
328  surveys in Seller's possession pertaining to the Property and must disclose to Buyer all easements, liens (including, without
329  limitation, governmental improvements approved, but not yet installed) or other title matters (including, without limitation, rights
330  of first refusal and options) not shown by public records, of which Seller has actual knowledge (Off-Record Matters). Buyer has
331  the right to inspect the Property to investigate if any third party has any right in the Property not shown by public records (e.g.,
332  unrecorded easement, boundary line discrepancy or water rights). Buyer's Notice to Terminate or Notice of Title Objection of any
333  unsatisfactory condition (whether disclosed by Seller or revealed by such inspection, notwithstanding § 8.2 and § 13), in Buyer's
334  sole subjective discretion, must be received by Seller on or before **Off-Record Title Objection Deadline**. If an Off-Record Matter
335  is received by Buyer after the **Off-Record Title Deadline**, Buyer has until the earlier of Closing or ten days after receipt by Buyer
336  to review and object to such Off-Record Matter. If Seller receives Buyer's Notice to Terminate or Notice of Title Objection
337  pursuant to this § 8.3 (Off-Record Title), any title objection by Buyer and this Contract are governed by the provisions set forth in
338  § 8.4 (Right to Object to Title, Resolution). If Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection by
339  the applicable deadline specified above, Buyer accepts title subject to such rights, if any, of third parties of which Buyer has actual
340  knowledge.
341      **8.4. Right to Object to Title, Resolution.** Buyer's right to object to any title matters includes, but is not limited to those
342  matters set forth in §§ 8.2 (Record Title), 8.3 (Off-Record Title) and 13 (Transfer of Title), in Buyer's sole subjective discretion. If
343  Buyer objects to any title matter, on or before the applicable deadline, Buyer has the following options:
344      **8.4.1. Title Objection, Resolution.** If Seller receives Buyer's written notice objecting to any title matter (Notice
345  of Title Objection), on or before the applicable deadline, and if Buyer and Seller have not agreed to a written settlement thereof on
346  or before **Title Resolution Deadline**, this Contract will terminate on the expiration of **Title Resolution Deadline**, unless Seller
347  receives Buyer's written withdrawal of Buyer's Notice of Title Objection (i.e., Buyer's written notice to waive objection to such
348  items and waives the Right to Terminate for that reason), on or before expiration of **Title Resolution Deadline**. If either the
349  Record Title Deadline or the Off-Record Title Deadline, or both, are extended to the earlier of Closing or ten days after receipt of
350  the applicable documents by Buyer, pursuant to § 8.2 (Record Title) or § 8.3 (Off-Record Title), the Title Resolution Deadline also
351  will be automatically extended to the earlier of Closing or fifteen days after Buyer's receipt of the applicable documents; or
352      **8.4.2. Title Objection, Right to Terminate.** Buyer may exercise the Right to Terminate under § 25.1, on or
353  before the applicable deadline, based on any unsatisfactory title matter, in Buyer's sole subjective discretion.
354      **8.5. Special Taxing Districts.** SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL OBLIGATION
355  INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX LEVIES ON THE TAXABLE
356  PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH DISTRICTS MAY BE PLACED AT RISK
357  FOR INCREASED MILL LEVIES AND TAX TO SUPPORT THE SERVICING OF SUCH DEBT WHERE
358  CIRCUMSTANCES ARISE RESULTING IN THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH
359  INDEBTEDNESS WITHOUT SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE THE
360  SPECIAL TAXING DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY
361  TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND BY OBTAINING
362  FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND
363  RECORDER, OR THE COUNTY ASSESSOR.
364      Buyer has the Right to Terminate under § 25.1, on or before **Off-Record Title Objection Deadline**, based on any
365  unsatisfactory effect of the Property being located within a special taxing district, in Buyer's sole subjective discretion.
366      **8.6. Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property, or a right to approve
367  this Contract, Seller must promptly submit this Contract according to the terms and conditions of such right. If the holder of the
368  right of first refusal exercises such right or the holder of a right to approve disapproves this Contract, this Contract will terminate.
369  If the right of first refusal is waived explicitly or expires, or the Contract is approved, this Contract will remain in full force and
370  effect. Seller must promptly notify Buyer in writing of the foregoing. If expiration or waiver of the right of first refusal or approval
371  of this Contract has not occurred on or before **Right of First Refusal Deadline**, this Contract will then terminate.
372      **8.7. Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed
373  carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the Property,
374  including, without limitation, boundary lines and encroachments, set-back requirements, area, zoning, building code violations,
375  unrecorded easements and claims of easements, leases and other unrecorded agreements, water on or under the Property, and
376  various laws and governmental regulations concerning land use, development and environmental matters.
377      **8.7.1. OIL, GAS, WATER AND MINERAL DISCLOSURE. THE SURFACE ESTATE OF THE
378  PROPERTY MAY BE OWNED SEPARATELY FROM THE UNDERLYING MINERAL ESTATE, AND TRANSFER
379  OF THE SURFACE ESTATE MAY NOT NECESSARILY INCLUDE TRANSFER OF THE MINERAL ESTATE OR
380  WATER RIGHTS. THIRD PARTIES MAY OWN OR LEASE INTERESTS IN OIL, GAS, OTHER MINERALS,
381  GEOTHERMAL ENERGY OR WATER ON OR UNDER THE SURFACE OF THE PROPERTY, WHICH INTERESTS

382 MAY GIVE THEM RIGHTS TO ENTER AND USE THE SURFACE OF THE PROPERTY TO ACCESS THE
383 MINERAL ESTATE, OIL, GAS OR WATER.
384       **8.7.2. SURFACE USE AGREEMENT.** THE USE OF THE SURFACE ESTATE OF THE PROPERTY TO
385 ACCESS THE OIL, GAS OR MINERALS MAY BE GOVERNED BY A SURFACE USE AGREEMENT, A
386 MEMORANDUM OR OTHER NOTICE OF WHICH MAY BE RECORDED WITH THE COUNTY CLERK AND
387 RECORDER.
388       **8.7.3. OIL AND GAS ACTIVITY.** OIL AND GAS ACTIVITY THAT MAY OCCUR ON OR ADJACENT
389 TO THE PROPERTY MAY INCLUDE, BUT IS NOT LIMITED TO, SURVEYING, DRILLING, WELL COMPLETION
390 OPERATIONS, STORAGE, OIL AND GAS, OR PRODUCTION FACILITIES, PRODUCING WELLS, REWORKING
391 OF CURRENT WELLS, AND GAS GATHERING AND PROCESSING FACILITIES.
392       **8.7.4. ADDITIONAL INFORMATION.** BUYER IS ENCOURAGED TO SEEK ADDITIONAL
393 INFORMATION REGARDING OIL AND GAS ACTIVITY ON OR ADJACENT TO THE PROPERTY, INCLUDING
394 DRILLING PERMIT APPLICATIONS. THIS INFORMATION MAY BE AVAILABLE FROM THE COLORADO OIL
395 AND GAS CONSERVATION COMMISSION.
396       **8.7.5. Title Insurance Exclusions.** Matters set forth in this Section, and others, may be excepted, excluded from,
397 or not covered by the owner's title insurance policy.
398    **8.8. Consult an Attorney.** Buyer is advised to timely consult legal counsel with respect to all such matters as there are
399 strict time limits provided in this Contract (e.g., **Record Title Objection Deadline** and **Off-Record Title Objection Deadline**).

400 **9. NEW ILC, NEW SURVEY.**
401    **9.1. New ILC or New Survey.** If the box is checked, a ☐ **New Improvement Location Certificate (New ILC)**
402 ☒ **New Survey** in the form of `Buyer shall have property pinned, flagged and staked as Land Survey Plat. See Additional Provisions` is required and the following will apply:
403       **9.1.1. Ordering of New ILC or New Survey.** ☐ Seller ☒ Buyer will order the New ILC or New Survey. The
404 New ILC or New Survey may also be a previous ILC or survey that is in the above-required form, certified and updated as of a
405 date after the date of this Contract.
406       **9.1.2. Payment for New ILC or New Survey.** The cost of the New ILC or New Survey will be paid, on or
407 before Closing, by: ☐ Seller ☒ Buyer or:
408 `Buyer shall pay`
409
410
411       **9.1.3. Delivery of New ILC or New Survey.** Buyer, Seller, the issuer of the Title Commitment (or the provider
412 of the opinion of title if an Abstract of Title), and `Buyer, Buyers Lender, copy to Buyers Agent` will receive a New ILC or New Survey on or before
413 **New ILC or New Survey Deadline.**
414       **9.1.4. Certification of New ILC or New Survey.** The New ILC or New Survey will be certified by the surveyor
415 to all those who are to receive the New ILC or New Survey.
416    **9.2. Buyer's Right to Waive or Change New ILC or New Survey Selection.** Buyer may select a New ILC or New
417 Survey different than initially specified in this Contract if there is no additional cost to Seller or change to the **New ILC or New**
418 **Survey Objection Deadline.** Buyer may, in Buyer's sole subjective discretion, waive a New ILC or New Survey if done prior to
419 Seller incurring any cost for the same.
420    **9.3. New ILC or New Survey Objection.** Buyer has the right to review and object to the **New ILC or New Survey.** If
421 the New ILC or New Survey is not timely received by Buyer or is unsatisfactory to Buyer, in Buyer's sole subjective discretion,
422 Buyer may, on or before **New ILC or New Survey Objection Deadline**, notwithstanding § 8.3 or § 13:
423       **9.3.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or
424       **9.3.2. New ILC or New Survey Objection.** Deliver to Seller a written description of any matter that was to be
425 shown or is shown in the New ILC or New Survey that is unsatisfactory and that Buyer requires Seller to correct.
426       **9.3.3. New ILC or New Survey Resolution.** If a **New ILC or New Survey Objection** is received by Seller, on
427 or before **New ILC or New Survey Objection Deadline**, and if a Buyer and Seller have not agreed in writing to a settlement
428 thereof on or before **New ILC or New Survey Resolution Deadline**, this Contract will terminate on expiration of the **New ILC**
429 **or New Survey Resolution Deadline**, unless Seller receives Buyer's written withdrawal of the New ILC or New Survey
430 Objection before such termination, i.e., on or before expiration of **New ILC or New Survey Resolution Deadline.**

431                                                           **DISCLOSURE, INSPECTION AND DUE DILIGENCE**

432 **10. PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY, DUE DILIGENCE, BUYER**
433 **DISCLOSURE AND SOURCE OF WATER.**

**10.1. Seller's Property Disclosure.** On or before **Seller's Property Disclosure Deadline**, Seller agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property Disclosure form completed by Seller to Seller's actual knowledge, current as of the date of this Contract.

**10.2. Disclosure of Latent Defects; Present Condition.** Seller must disclose to Buyer any latent defects actually known by Seller. Seller agrees that disclosure of latent defects will be in writing. Except as otherwise provided in this Contract, Buyer acknowledges that Seller is conveying the Property to Buyer in an **"As Is"** condition, **"Where Is"** and **"With All Faults."**

**10.3. Inspection.** Unless otherwise provided in this Contract, Buyer, acting in good faith, has the right to have inspections (by one or more third parties, personally or both) of the Property and Inclusions (Inspection), at Buyer's expense. If (1) the physical condition of the Property, including, but not limited to, the roof, walls, structural integrity of the Property, the electrical, plumbing, HVAC and other mechanical systems of the Property, (2) the physical condition of the Inclusions, (3) service to the Property (including utilities and communication services), systems and components of the Property (e.g. heating and plumbing), (4) any proposed or existing transportation project, road, street or highway, or (5) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants is unsatisfactory, in Buyer's sole subjective discretion, Buyer may, on or before **Inspection Objection Deadline**:

**10.3.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

**10.3.2. Inspection Objection.** Deliver to Seller a written description of any unsatisfactory physical condition that Buyer requires Seller to correct.

**10.3.3. Inspection Resolution.** If an Inspection Objection is received by Seller, on or before **Inspection Objection Deadline**, and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Inspection Resolution Deadline**, this Contract will terminate on **Inspection Resolution Deadline** unless Seller receives Buyer's written withdrawal of the Inspection Objection before such termination, i.e., on or before expiration of **Inspection Resolution Deadline**.

**10.4. Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract or other written agreement between the parties, is responsible for payment for all inspections, tests, surveys, engineering reports, or other reports performed at Buyer's request (Work) and must pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer must not permit claims or liens of any kind against the Property for Work performed on the Property. Buyer agrees to indemnify, protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce this section, including Seller's reasonable attorney fees, legal fees and expenses. The provisions of this section survive the termination of this Contract. This § 10.4 does not apply to items performed pursuant to an Inspection Resolution.

**10.5. Insurability.** Buyer has the right to review and object to the availability, terms and conditions of and premium for property insurance (Property Insurance). Buyer has the Right to Terminate under § 25.1, on or before **Property Insurance Objection Deadline**, based on any unsatisfactory provision of the Property Insurance, in Buyer's sole subjective discretion.

**10.6. Due Diligence.**

**10.6.1. Due Diligence Documents.** If the respective box is checked, Seller agrees to deliver copies of the following documents and information pertaining to the Property (Due Diligence Documents) to Buyer on or before **Due Diligence Documents Delivery Deadline**:

☐ 10.6.1.1. All contracts relating to the operation, maintenance and management of the Property;
☐ 10.6.1.2. Property tax bills for the last _N/A_ years;
☒ 10.6.1.3. As-built construction plans to the Property and the tenant improvements, including architectural, electrical, mechanical, and structural systems, engineering reports, and permanent Certificates of Occupancy, to the extent now available;
☒ 10.6.1.4. A list of all Inclusions to be conveyed to Buyer;
☐ 10.6.1.5. Operating statements for the past _N/A_ years;
☐ 10.6.1.6. A rent roll accurate and correct to the date of this Contract;
☒ 10.6.1.7. All current leases, including any amendments or other occupancy agreements, pertaining to the Property. Those leases or other occupancy agreements pertaining to the Property that survive Closing are as follows (Leases): _All Leases & tenant agreements on the property, written or oral shall be delivered to the Buyer. Any handshake or oral agreements shall be disclosed regarding maintenance, in any manner, for the property and dwellings_

☐ 10.6.1.8. A schedule of any tenant improvement work Seller is obligated to complete but has not yet been completed and capital improvement work either scheduled or in process on the date of this Contract;
☒ 10.6.1.9. All insurance policies pertaining to the Property and copies of any claims which have been made for the past _Seller will disclose any insurance claims and provide documentation, for anythin that occurred in the last 10_ years;

---

CBS2-6-15. CONTRACT TO BUY AND SELL REAL ESTATE (INCOME - RESIDENTIAL) 3/5/2018 14:56    Page 10 of 20

Buyer initials _____    EXHIBIT  Seller initials _____    Wycoff000014

487 ☒ **10.6.1.10.** Soils reports, surveys and engineering reports or data pertaining to the Property (if not
488 delivered earlier under § 8.3);
489 ☒ **10.6.1.11.** Any and all existing documentation and reports regarding Phase I and II environmental reports,
490 letters, test results, advisories, and similar documents respective to the existence or nonexistence of asbestos, PCB transformers, or
491 other toxic, hazardous or contaminated substances, and/or underground storage tanks and/or radon gas. If no reports are in Seller's
492 possession or known to Seller, Seller warrants that no such reports are in Seller's possession or known to Seller;
493 ☐ **10.6.1.12.** Any *Americans with Disabilities Act* reports, studies or surveys concerning the compliance of
494 the Property with said Act;
495 ☒ **10.6.1.13.** All permits, licenses and other building or use authorizations issued by any governmental
496 authority with jurisdiction over the Property and written notice of any violation of any such permits, licenses or use authorizations,
497 if any; and
498 ☒ **10.6.1.14.** Other documents and information:
499 `Seller to disclose in detail and provide copy`
`of the Left hand easement, the well that Left Hand visits, on what frequency`
`and why.`
`Any other documents in Sellers possession pertaining to the property.`
500
501
502
503 **10.6.2. Due Diligence Documents Review and Objection.** Buyer has the right to review and object to Due
504 Diligence Documents. If the Due Diligence Documents are not supplied to Buyer or are unsatisfactory in Buyer's sole subjective
505 discretion, Buyer may, on or before **Due Diligence Documents Objection Deadline**:
506 **10.6.2.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or
507 **10.6.2.2. Due Diligence Documents Objection.** Deliver to Seller a written description of any
508 unsatisfactory Due Diligence Documents that Buyer requires Seller to correct.
509 **10.6.2.3. Due Diligence Documents Resolution.** If a Due Diligence Documents Objection is received
510 by Seller, on or before **Due Diligence Documents Objection Deadline**, and if Buyer and Seller have not agreed in writing to a
511 settlement thereof on or before **Due Diligence Documents Resolution Deadline**, this Contract will terminate on **Due Diligence**
512 **Documents Resolution Deadline** unless Seller receives Buyer's written withdrawal of the Due Diligence Documents Objection
513 before such termination, i.e., on or before expiration of **Due Diligence Documents Resolution Deadline**.
514 **10.6.3. Zoning.** Buyer has the Right to Terminate under § 25.1, on or before **Due Diligence Documents Objection**
515 **Deadline**, based on any unsatisfactory zoning and any use restrictions imposed by any governmental agency with jurisdiction
516 over the Property, in Buyer's sole subjective discretion.
517 **10.6.4. Due Diligence – Environmental, ADA.** Buyer has the right to obtain environmental inspections of the
518 Property including Phase I and Phase II Environmental Site Assessments, as applicable. ☐ **Seller** ☒ **Buyer** will order or provide
519 **Phase I Environmental Site Assessment, Phase II Environmental Site Assessment** (compliant with most current version of the
520 applicable ASTM E1527 standard practices for Environmental Site Assessments) and/or `Phase 1 Environmental`
`assessment, or any other Environmental assessment, at`
`Buyer's sole subjective judgement.` , at the expense
521 of ☐ **Seller** ☒ **Buyer** (Environmental Inspection). In addition, Buyer, at Buyer's expense, may also conduct an evaluation whether the
522 Property complies with the *Americans with Disabilities Act* (ADA Evaluation). All such inspections and evaluations must be
523 conducted at such times as are mutually agreeable to minimize the interruption of Seller's and any Seller's tenants' business uses
524 of the Property, if any.
525 If Buyer's Phase I Environmental Site Assessment recommends a Phase II Environmental Site Assessment, the
526 **Environmental Inspection Objection Deadline** will be extended by `30 Days for Phase 2 if recommended after`
`Phase 1` days (Extended Environmental Inspection Objection
527 Deadline) and if such Extended Environmental Inspection Objection Deadline extends beyond the **Closing Date**, the **Closing Date**
528 will be extended a like period of time. In such event, ☐ **Seller** ☒ **Buyer** must pay the cost for such Phase II Environmental Site
529 Assessment.
530 Notwithstanding Buyer's right to obtain additional environmental inspections of the Property in this § 10.6.5, Buyer has the
531 Right to Terminate under § 25.1, on or before **Environmental Inspection Objection Deadline**, or if applicable, the Extended
532 Environmental Inspection Objection Deadline, based on any unsatisfactory results of Environmental Inspection, in Buyer's sole
533 subjective discretion.
534 Buyer has the Right to Terminate under § 25.1, on or before **ADA Evaluation Objection Deadline**, based on any
535 unsatisfactory ADA Evaluation, in Buyer's sole subjective discretion.
536 **10.7. Conditional Upon Sale of Property.** This Contract is conditional upon the sale and closing of that certain property
537 owned by Buyer and commonly known as `none`. Buyer has the Right to Terminate

538 under § 25.1 effective upon Seller's receipt of Buyer's Notice to Terminate on or before **Conditional Sale Deadline** if such
539 property is not sold and closed by such deadline. This § 10.7 is for the sole benefit of Buyer. If Seller does not receive Buyer's
540 Notice to Terminate on or before **Conditional Sale Deadline**, Buyer waives any Right to Terminate under this provision.
541   **10.8.   Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer ☐ Does ☒ **Does Not**
542 acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water Addendum disclosing the source of potable water
543 for the Property. ☐ There is **No Well.** Buyer ☐ **Does** ☒ **Does Not** acknowledge receipt of a copy of the current well permit.
544 **Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON NONRENEWABLE GROUND**
545 **WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR INVESTIGATE THE DESCRIBED SOURCE) TO**
546 **DETERMINE THE LONG-TERM SUFFICIENCY OF THE PROVIDER'S WATER SUPPLIES.**
547   **10.9.   Carbon Monoxide Alarms. Note:** If the improvements on the Property have a fuel-fired heater or appliance, a
548 fireplace, or an attached garage and include one or more rooms lawfully used for sleeping purposes (Bedroom), the parties
549 acknowledge that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within
550 fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code.
551   **10.10.   Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings
552 for which a building permit was issued prior to January 1, 1978, this Contract is void unless (1) a completed Lead-Based Paint
553 Disclosure (Sales) form is signed by Seller, the required real estate licensees and Buyer, and (2) Seller receives the completed and
554 fully executed form prior to the time when this Contract is signed by all parties. Buyer acknowledges timely receipt of a completed
555 Lead-Based Paint Disclosure (Sales) form signed by Seller and the real estate licensees.
556   **10.11.   Methamphetamine Disclosure.** If Seller knows that methamphetamine was ever manufactured, processed, cooked,
557 disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure is required if the Property was
558 remediated in accordance with state standards and other requirements are fulfilled pursuant to § 25-18.5-102, C.R.S. Buyer further
559 acknowledges that Buyer has the right to engage a certified hygienist or industrial hygienist to test whether the Property has ever
560 been used as a methamphetamine laboratory. Buyer has the Right to Terminate under § 25.1, upon Seller's receipt of Buyer's
561 written Notice to Terminate, notwithstanding any other provision of this Contract, based on Buyer's test results that indicate the
562 Property has been contaminated with methamphetamine, but has not been remediated to meet the standards established by rules of
563 the State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S. Buyer must promptly give written notice to Seller of the
564 results of the test.
565   **10.12.   Existing Leases; Modification of Existing Leases; New Leases.** Seller states that none of the Leases to be assigned
566 to the Buyer at the time of Closing contain any rent concessions, rent reductions or rent abatements except as disclosed in the
567 Lease or other writing received by Buyer. Seller will not amend, alter, modify, extend or cancel any of the Leases nor will Seller
568 enter into any new leases affecting the Property without the prior written consent of Buyer, which consent will not be unreasonably
569 withheld or delayed.

570 **11.   TENANT ESTOPPEL STATEMENTS.**
571   **11.1.   Tenant Estoppel Statements Conditions.** Buyer has the right to review and object to any Estoppel Statements.
572 Seller must obtain and deliver to Buyer on or before **Tenant Estoppel Statements Deadline**, statements in a form and substance
573 reasonably acceptable to Buyer, from each occupant or tenant at the Property (Estoppel Statement) attached to a copy of the Lease
574 stating:
575     **11.1.1.**   The commencement date of the Lease and scheduled termination date of the Lease;
576     **11.1.2.**   That said Lease is in full force and effect and that there have been no subsequent modifications or
577 amendments;
578     **11.1.3.**   The amount of any advance rentals paid, rent concessions given, and deposits paid to Seller;
579     **11.1.4.**   The amount of monthly (or other applicable period) rental paid to Seller;
580     **11.1.5.**   That there is no default under the terms of said Lease by landlord or occupant; and
581     **11.1.6.**   That the Lease to which the Estoppel is attached is a true, correct and complete copy of the Lease demising
582 the premises it describes.
583   **11.2.   Tenant Estoppel Statements Objection.** Buyer has the Right to Terminate under § 25.1, on or before **Tenant**
584 **Estoppel Statements Objection Deadline**, based on any unsatisfactory Estoppel Statement, in Buyer's sole subjective discretion,
585 or if Seller fails to deliver the Estoppel Statements on or before **Tenant Estoppel Statements Deadline**. Buyer also has the
586 unilateral right to waive any unsatisfactory Estoppel Statement.
587

588 **CLOSING PROVISIONS**

589 **12.   CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.**
590   **12.1.   Closing Documents and Closing Information.** Seller and Buyer will cooperate with the Closing Company to
591 enable the Closing Company to prepare and deliver documents required for Closing to Buyer and Seller and their designees. If

592 Buyer is obtaining a new loan to purchase the Property, Buyer acknowledges Buyer's lender is required to provide the Closing
593 Company, in a timely manner, all required loan documents and financial information concerning Buyer's new loan. Buyer and
594 Seller will furnish any additional information and documents required by Closing Company that will be necessary to complete this
595 transaction. Buyer and Seller will sign and complete all customary or reasonably required documents at or before Closing.
596     **12.2. Closing Instructions.** Colorado Real Estate Commission's Closing Instructions ☐ **Are** ☒ **Are Not** executed with
597 this Contract.
598     **12.3. Closing.** Delivery of deed from Seller to Buyer will be at closing (Closing). Closing will be on the date specified as
599 the **Closing Date** or by mutual agreement at an earlier date. The hour and place of Closing will be as designated by
600 *Seller and Buyer or their agents*.
601     **12.4. Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality, and extent of service vary
602 between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

603 **13. TRANSFER OF TITLE.** Subject to tender of payment at Closing as required herein and compliance by Buyer with the
604 other terms and provisions hereof, Seller must execute and deliver a good and sufficient *Special Warranty* deed
605 to Buyer, at Closing, conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except as
606 provided herein, title will be conveyed free and clear of all liens, including any governmental liens for special improvements
607 installed as of the date of Buyer's signature hereon, whether assessed or not. Title will be conveyed subject to:
608     **13.1.** Those specific Exceptions described by reference to recorded documents as reflected in the Title Documents
609 accepted by Buyer in accordance with **Record Title**,
610     **13.2.** Distribution utility easements (including cable TV),
611     **13.3.** Those specifically described rights of third parties not shown by the public records of which Buyer has actual
612 knowledge and which were accepted by Buyer in accordance with **Off-Record Title** and **New ILC or New Survey**,
613     **13.4.** Inclusion of the Property within any special taxing district, and
614     **13.5.** Any special assessment if the improvements were not installed as of the date of Buyer's signature hereon, whether
615 assessed prior to or after Closing, and
616     **13.6.** Other *none known*.

617 **14. PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid will be paid at or before Closing from the
618 proceeds of this transaction or from any other source.

619 **15. CLOSING COSTS, CLOSING FEE, ASSOCIATION FEES AND TAXES.**
620     **15.1. Closing Costs.** Buyer and Seller must pay, in Good Funds, their respective closing costs and all other items required
621 to be paid at Closing, except as otherwise provided herein.
622     **15.2. Closing Services Fee.** The fee for real estate closing services must be paid at Closing by ☐ **Buyer** ☐ **Seller**
623 ☒ **One-Half by Buyer and One-Half by Seller** ☐ **Other** *N/A*.
624     **15.3. Status Letter and Record Change Fees.** Any fees incident to the issuance of Association's statement of
625 assessments (Status Letter) must be paid by ☒ **None** ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller.**
626 Any record change fee assessed by the Association including, but not limited to, ownership record transfer fees regardless of name
627 or title of such fee (Association's Record Change Fee) must be paid by ☒ **None** ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer**
628 **and One-Half by Seller.**
629     **15.4. Local Transfer Tax.** ☐ **The Local Transfer Tax** of *N/A* % of the Purchase Price must be paid at Closing by
630 ☒ **None** ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller.**
631     **15.5. Private Transfer Fee.** Private transfer fees and other fees due to a transfer of the Property, payable at Closing, such
632 as community association fees, developer fees and foundation fees, must be paid at Closing by ☒ **None** ☐ **Buyer** ☐ **Seller**
633 ☐ **One-Half by Buyer and One-Half by Seller.** The Private Transfer fee, whether one or more, is for the following association(s):
634 *N/A* in the total amount of *N/A* % of the Purchase Price or $ *N/A*.
635     **15.6. Water Transfer Fees.** The Water Transfer Fees can change. The fees, as of the date of this Contract, do not exceed
636 $ *N/A* for:
637     ☒ Water Stock/Certificates     ☒ Water District
638     ☐ Augmentation Membership   ☒ Small Domestic Water Company   ☒ *Left Hand Water Shares transfer fee TBD*
639 and must be paid at Closing by ☐ **None** ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller.**
640     **15.7. Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction must be paid when due by
641 ☒ **None** ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** .

642 **16. PRORATIONS.** The following will be prorated to **Closing Date**, except as otherwise provided:
643     **16.1. Taxes.** Personal property taxes, if any, special taxing district assessments, if any, and general real estate taxes for the
644 year of Closing, based on ☐ **Taxes for the Calendar Year Immediately Preceding Closing** ☒ **Most Recent Mill Levy and**

---

645 **Most Recent Assessed Valuation**, adjusted by any applicable qualifying seniors property tax exemption, qualifying disabled
646 veteran exemption or ☐ Other *N/A*.
647     **16.2. Rents.** Rents based on ☐ **Rents Actually Received** ☒ **Accrued.** At Closing, Seller will transfer or credit to
648 Buyer the security deposits for all Leases assigned, or any remainder after lawful deductions, and notify all tenants in writing of
649 such transfer and of the transferee's name and address. Seller must assign to Buyer all Leases in effect at Closing and Buyer must
650 assume Seller's obligations under such Leases.
651     **16.3. Association Assessments.** Current regular Association assessments and dues (Association Assessments) paid in
652 advance will be credited to Seller at Closing. Cash reserves held out of the regular Association Assessments for deferred
653 maintenance by the Association will not be credited to Seller except as may be otherwise provided by the Governing Documents.
654 Buyer acknowledges that Buyer may be obligated to pay the Association, at Closing, an amount for reserves or working capital.
655 Any special assessment assessed prior to **Closing Date** by the Association will be the obligation of ☐ **Buyer** ☐ **Seller**. Except
656 however, any special assessment by the Association for improvements that have been installed as of the date of Buyer's signature
657 hereon, whether assessed prior to or after Closing, will be the obligation of Seller. Seller represents that the Association
658 Assessments are currently payable at approximately $ *N/A* per *N/A* and that there are no unpaid regular
659 or special assessments against the Property except the current regular assessments and *N/A*. Such
660 assessments are subject to change as provided in the Governing Documents. Seller agrees to promptly request the Association to
661 deliver to Buyer before **Closing Date** a current Status Letter.
662     **16.4. Other Prorations.** Water and sewer charges, propane, interest on continuing loan, and *N/A*.
663     **16.5. Final Settlement.** Unless otherwise agreed in writing, these prorations are final.

664 **17. POSSESSION.** Possession of the Property will be delivered to Buyer on **Possession Date** at **Possession Time**, subject to
665 the Leases as set forth in § 10.6.1.7.
666
667     If Seller, after Closing, fails to deliver possession as specified, Seller will be subject to eviction and will be additionally liable
668 to Buyer for payment of $ *500.00* per day (or any part of a day notwithstanding § 18.1) from **Possession Date** and
669 **Possession Time** until possession is delivered.

670 <center>**GENERAL PROVISIONS**</center>

671 **18. DAY; COMPUTATION OF PERIOD OF DAYS, DEADLINE.**
672     **18.1. Day.** As used in this Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain
673 Time (Standard or Daylight Savings as applicable).
674     **18.2. Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified,
675 the first day is excluded and the last day is included (e.g., three days after MEC). If any deadline falls on a Saturday, Sunday or
676 federal or Colorado state holiday (Holiday), such deadline ☒ **Will** ☐ **Will Not** be extended to the next day that is not a
677 Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

678 **19. CAUSES OF LOSS, INSURANCE; DAMAGE TO INCLUSIONS AND SERVICES; CONDEMNATION; AND
679 WALK-THROUGH.** Except as otherwise provided in this Contract, the Property, Inclusions or both will be delivered in the
680 condition existing as of the date of this Contract, ordinary wear and tear excepted.
681     **19.1. Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other perils or causes of
682 loss prior to Closing in an amount of not more than ten percent of the total Purchase Price (Property Damage), and if the repair of
683 the damage will be paid by insurance (other than the deductible to be paid by Seller), then Seller, upon receipt of the insurance
684 proceeds, will use Seller's reasonable efforts to repair the Property before **Closing Date**. Buyer has the Right to Terminate under
685 § 25.1, on or before **Closing Date** if the Property is not repaired before **Closing Date** or if the damage exceeds such sum. Should
686 Buyer elect to carry out this Contract despite such Property Damage, Buyer is entitled to a credit at Closing for all insurance
687 proceeds that were received by Seller (but not the Association, if any) resulting from damage to the Property and Inclusions, plus
688 the amount of any deductible provided for in the insurance policy. This credit may not exceed the Purchase Price. In the event
689 Seller has not received the insurance proceeds prior to Closing, the parties may agree to extend the **Closing Date** to have the
690 Property repaired prior to Closing or, at the option of Buyer, (1) Seller must assign to Buyer the right to the proceeds at Closing, if
691 acceptable to Seller's insurance company and Buyer's lender; or (2) the parties may enter into a written agreement prepared by the
692 parties or their attorney requiring the Seller to escrow at Closing from Seller's sale proceeds the amount Seller has received and
693 will receive due to such damage, not exceeding the total Purchase Price, plus the amount of any deductible that applies to the
694 insurance claim.
695     **19.2. Damage, Inclusions and Services.** Should any Inclusion or service (including utilities and communication
696 services), system, component or fixture of the Property (collectively Service) (e.g., heating or plumbing), fail or be damaged
697 between the date of this Contract and Closing or possession, whichever is earlier, then Seller is liable for the repair or replacement
698 of such Inclusion or Service with a unit of similar size, age and quality, or an equivalent credit, but only to the extent that the

699 maintenance or replacement of such Inclusion or Service is not the responsibility of the Association, if any, less any insurance
700 proceeds received by Buyer covering such repair or replacement. If the failed or damaged Inclusion or Service is not repaired or
701 replaced on or before Closing or possession, whichever is earlier, Buyer has the Right to Terminate under § 25.1, on or before
702 **Closing Date**, or, at the option of Buyer, Buyer is entitled to a credit at Closing for the repair or replacement of such Inclusion or
703 Service. Such credit must not exceed the Purchase Price. If Buyer receives such a credit, Seller's right for any claim against the
704 Association, if any, will survive Closing. Seller and Buyer are aware of the existence of pre-owned home warranty programs that
705 may be purchased and may cover the repair or replacement of such Inclusions.
706     **19.3. Condemnation.** In the event Seller receives actual notice prior to Closing that a pending condemnation action may
707 result in a taking of all or part of the Property or Inclusions, Seller must promptly notify Buyer, in writing, of such condemnation
708 action. Buyer has the Right to Terminate under § 25.1, on or before **Closing Date**, based on such condemnation action, in Buyer's
709 sole subjective discretion. Should Buyer elect to consummate this Contract despite such diminution of value to the Property and
710 Inclusions, Buyer is entitled to a credit at Closing for all condemnation proceeds awarded to Seller for the diminution in the value
711 of the Property or Inclusions but such credit will not include relocation benefits or expenses, or exceed the Purchase Price.
712     **19.4. Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, has the right to walk through the
713 Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with this Contract.

714 **20. RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this Contract, Buyer and Seller acknowledge
715 that the respective broker has advised that this Contract has important legal consequences and has recommended the examination
716 of title and consultation with legal and tax or other counsel before signing this Contract.

717 **21. TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence for all dates and deadlines in this Contract.
718 This means that all dates and deadlines are strict and absolute. If any payment due, including Earnest Money, is not paid, honored
719 or tendered when due, or if any obligation is not performed timely as provided in this Contract or waived, the non-defaulting
720 party has the following remedies:
721     **21.1. If Buyer is in Default:**
722 ☐     **21.1.1. Specific Performance.** Seller may elect to cancel this Contract and all Earnest Money (whether or not paid
723 by Buyer) will be paid to Seller and retained by Seller. It is agreed that the Earnest Money is not a penalty, and the Parties agree
724 the amount is fair and reasonable. Seller may recover such additional damages as may be proper. Alternatively, Seller may elect
725 to treat this Contract as being in full force and effect and Seller has the right to specific performance or damages, or both.
726     **21.1.2. Liquidated Damages, Applicable. This § 21.1.2 applies <u>unless the box in § 21.1.1. is checked</u>.** Seller
727 may cancel this Contract. All Earnest Money (whether or not paid by Buyer) will be paid to Seller, and retained by Seller. It is
728 agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES, and not a penalty, which amount the parties agree
729 is fair and reasonable and (except as provided in §§ 10.4, 22, 23 and 24), said payment of Earnest Money is SELLER'S ONLY
730 REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly waives the remedies of specific
731 performance and additional damages.
732     **21.2. If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received
733 hereunder will be returned and Buyer may recover such damages as may be proper. Alternatively, Buyer may elect to treat this
734 Contract as being in full force and effect and Buyer has the right to specific performance or damages, or both.

735 **22. LEGAL FEES, COST AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any arbitration
736 or litigation relating to this Contract, prior to or after **Closing Date**, the arbitrator or court must award to the prevailing party
737 all reasonable costs and expenses, including attorney fees, legal fees and expenses.

738 **23. MEDIATION.** If a dispute arises relating to this Contract, (whether prior to or after Closing) and is not resolved, the parties
739 must first proceed, in good faith, to mediation. Mediation is a process in which the parties meet with an impartial person who helps
740 to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. Before any mediated settlement is
741 binding, the parties to the dispute must agree to the settlement, in writing. The parties will jointly appoint an acceptable mediator
742 and will share equally in the cost of such mediation. The obligation to mediate, unless otherwise agreed, will terminate if the entire
743 dispute is not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the other at
744 that party's last known address (physical or electronic as provided in § 27). Nothing in this Section prohibits either party from
745 filing a lawsuit and recording a *lis pendens* affecting the Property, before or after the date of written notice requesting mediation.
746 This section will not alter any date in this Contract, unless otherwise agreed.

747 **24. EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder must release the Earnest
748 Money following receipt of written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding
749 the Earnest Money, Earnest Money Holder is not required to release the Earnest Money. Earnest Money Holder, in its sole
750 subjective discretion, has several options: (1) wait for any proceeding between Buyer and Seller; (2) interplead all parties and
751 deposit Earnest Money into a court of competent jurisdiction, (Earnest Money Holder is entitled to recover court costs and

752 reasonable attorney and legal fees incurred with such action); or (3) provide notice to Buyer and Seller that unless Earnest Money
753 Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the
754 lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder is
755 authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit, and has
756 not interpled the monies at the time of any Order, Earnest Money Holder must disburse the Earnest Money pursuant to the Order
757 of the Court. The parties reaffirm the obligation of **Mediation**. This Section will survive cancellation or termination of this
758 Contract.

759 **25. TERMINATION.**
760     **25.1. Right to Terminate.** If a party has a right to terminate, as provided in this Contract (Right to Terminate), the
761 termination is effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such written
762 notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not received on or
763 before the specified deadline, the party with the Right to Terminate accepts the specified matter, document or condition as
764 satisfactory and waives the Right to Terminate under such provision.
765     **25.2. Effect of Termination.** In the event this Contract is terminated, all Earnest Money received hereunder will be
766 returned and the parties are relieved of all obligations hereunder, subject to §§ 10.4, 22, 23 and 24.

767 **26. ENTIRE AGREEMENT, MODIFICATION, SURVIVAL; SUCCESSORS.** This Contract, its exhibits and specified
768 addenda, constitute the entire agreement between the parties relating to the subject hereof, and any prior agreements pertaining
769 thereto, whether oral or written, have been merged and integrated into this Contract. No subsequent modification of any of the
770 terms of this Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any right
771 or obligation in this Contract that, by its terms, exists or is intended to be performed after termination or Closing survives the
772 same. Any successor to a Party receives the predecessor's benefits and obligations of this Contract.

773 **27. NOTICE, DELIVERY, AND CHOICE OF LAW.**
774     **27.1. Physical Delivery and Notice.** Any document, or notice to Buyer or Seller must be in writing, except as provided in
775 § 27.2, and is effective when physically received by such party, any individual named in this Contract to receive documents or
776 notices for such party, the Broker, or Brokerage Firm of Broker working with such party (except any notice or delivery after
777 Closing must be received by the party, not Broker or Brokerage Firm).
778     **27.2. Electronic Notice.** As an alternative to physical delivery, any notice, may be delivered in electronic form to Buyer
779 or Seller, any individual named in this Contract to receive documents or notices for such party, the Broker or Brokerage Firm of
780 Broker working with such party (except any notice or delivery after Closing must be received by the party, not Broker or
781 Brokerage Firm) at the electronic address of the recipient by facsimile, email or N/A.
782     **27.3. Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email
783 address of the recipient, (2) a link or access to a website or server provided the recipient receives the information necessary to
784 access the documents, or (3) facsimile at the Fax No. of the recipient.
785     **27.4. Choice of Law.** This Contract and all disputes arising hereunder are governed by and construed in accordance with
786 the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for real property
787 located in Colorado.

788 **28. NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal will expire unless accepted in writing, by Buyer and
789 Seller, as evidenced by their signatures below, and the offering party receives notice of such acceptance pursuant to § 27 on or
790 before **Acceptance Deadline Date** and **Acceptance Deadline Time**. If accepted, this document will become a contract between
791 Seller and Buyer. A copy of this Contract may be executed by each party, separately, and when each party has executed a copy
792 thereof, such copies taken together are deemed to be a full and complete contract between the parties.

793 **29. GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not
794 limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations, Title**
795 **Insurance, Record Title and Off-Record Title, New ILC, New Survey** and **Property Disclosure, Inspection, Indemnity,**
796 **Insurability, Due Diligence, Buyer Disclosure and Source of Water.**

797 | ADDITIONAL PROVISIONS AND ATTACHMENTS |

798 **30. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
799 Commission.)
800     1. Buyer shall have licensed surveyor pin, flag and stake the entire property
showing all boundary lines and all intrusions and septic fields which encroach
from Mountain Ridge Homes. Buyer shall supply Land Survey Plat which shall

---

CBS2-6-15. CONTRACT TO BUY AND SELL REAL ESTATE (INCOME - RESIDENTIAL) 3/5/2018 14:56      Page 16 of 20

Buyer initials _____      EXHIBIT Seller initials _____      Wycoff000020

be certified for the benefit of the title company and Buyer. Buyer shall pay. Seller shall supply a full sized copy of the survey in his possession within 10 days of Contract acceptance.

2. Subject to approval of terms by Buyer's lender, Buyer and Seller agree to sign a rent back lease for the office in the Yellow Barn. Terms to be determined by April 20. Seller agrees to carry full renters insurance effective day of closing, until fully vacated and supply Buyer with a copy

3. Seller shall give notice to tenant in small cottage to vacate and terminate their lease effective June 1, 2018. Seller shall execute an assignment of leases in form acceptable to Buyer at closing which assigns all of Seller's right, title and interest as landlord under the leases encumbering the Property, copies of which have been provided by Seller.

4. Seller shall have all septics inspected and pumped as required by Boulder County Health department and apply to Boulder County Health Department for Septic Smart Certification. Three days prior to Inspection Objection Deadline Seller will supply copy of initial Inspection Report to Buyer and Buyer's Agent. All septics must pass the Septic Smart test and receive current certification from Septic Smart. Septic Smart certificates are taking about 2 weeks for Boulder County to produce. Seller shall pay.

5. Title company shall be Land Title Guarantee, Boulder, closer Angie Mansfield. Seller shall pay.

6. The purchase of the Property is contingent on Seller obtaining a written agreement with the Mountain Ridge HOA regarding a solution that may include license, property swap and or purchase by either party that addresses the 3 or more areas that the sellers property and HOA property boundary that have legal description and or use different than recorded and or understood, on terms and conditions satisfactory to Buyer, by the Inspection Objection Deadline. Such agreement may be recorded at closing at Buyer's request.

7. Seller shall deliver to buyer proof that all ADU are legal under Boulder County land use code by Inspection Objection Deadline.

8. Seller is required by Buyer and Buyer's attorney to complete the Sellers Property Disclosure to the best of Sellers ability.

9. Seller agrees to pay Mara Yehl and Colorado Landmark Realtors 3% commission based on the sales price at a successful closing.

10. Property is being sold As-Is after Buyer completes his investigations subject to Seller's representations and warranties under the Sellers Property Disclosure and the warranty deed.

801
802
803
804
805
806
807
808 **31. ATTACHMENTS.**
809     **31.1.** The following attachments **are a part** of this Contract:

---

CBS2-6-15. CONTRACT TO BUY AND SELL REAL ESTATE (INCOME - RESIDENTIAL) 3/5/2018 14:56     Page 17 of 20

Buyer initials _____     EXHIBIT Seller initials _____     Wycoff000021

810  N/A
811
812
813
814
815     **31.2.**  The following disclosure forms **are attached** but are **not** a part of this Contract:
816  Sellers Property Disclosures
817
818
819

820                                    **SIGNATURES**
821
Buyer's Name: Caerleon, LLC

Buyer's Signature: *Timothy Moley for Caerleon, LLC*   Date: 5 March 2018
Address: N/A
         N/A
Phone No.: N/A
Fax No.: N/A
Email Address: N/A

822  **[NOTE: If this offer is being countered or rejected, do not sign this document. Refer to § 32]**

Seller's Name: Wycoff Financial, LLC

Seller's Signature: Jeffrey Wycoff for Wycoff Financial, LLC   Date:
Address: 9417 Foothills Hwy
         Longmont, CO 80503
Phone No.: N/A
Fax No.: N/A
Email Address: N/A

Seller's Signature:   Date:
Address:
Phone No.:
Fax No.:
Email Address:

823

CBS2-6-15. CONTRACT TO BUY AND SELL REAL ESTATE (INCOME - RESIDENTIAL)   3/5/2018 14:56   Page 18 of 20

Buyer initials _____   EXHIBIT Seller initials _____   Wycoff000022

824  **32. COUNTER; REJECTION.** This offer is ☐ Countered ☐ Rejected.
825  Initials only of party (Buyer or Seller) who countered or rejected offer _____
826

**END OF CONTRACT TO BUY AND SELL REAL ESTATE**

---

**33. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Buyer)

Broker ☒ Does ☐ Does Not acknowledge receipt of Earnest Money deposit and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Buyer as a ☒ **Buyer's Agent** ☐ **Seller's Agent** ☐ **Transaction-Broker** in this transaction.
☐ This is a **Change of Status.**

Brokerage Firm's compensation or commission is to be paid by ☐ **Listing Brokerage Firm** ☐ **Buyer** ☒ **Other** *Seller pays 3% of final sales price to Colorado Landmark, Realtors.*

Brokerage Firm's Name: *Colorado Landmark, Realtors Niwot*
Broker's Name: *Mara Yehl*

Broker's Signature: *[signature]*  Date: *3/5/2018*

Address: *136 2nd Ave Unit C*
*Niwot, CO 80544*
Phone No.: *(303) 652-8800*
Fax No.: *N/A*
Email Address: *mara@coloradolandmark.com*

---

**34. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Seller)

Broker ☐ Does ☐ Does Not acknowledge receipt of Earnest Money deposit and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Seller as a ☐ **Seller's Agent** ☐ **Buyer's Agent** ☒ **Transaction-Broker** in this transaction.
☐ This is a **Change of Status.**

Brokerage Firm's compensation or commission is to be paid by ☒ **Seller** ☐ **Buyer** ☐ **Other** *N/A*.

Brokerage Firm's Name: *N/A*
Broker's Name: *None*

---

|  |  |  |
|---|---|---|
|  | Broker's Signature: | Date |
| Address: | N/A |  |
|  | N/A |  |
| Phone No.: | N/A |  |
| Fax No.: | N/A |  |
| Email Address: | N/A |  |

827